MILLS COUNTY v. THE B. & M. R. R. Co.

THE C. B. & Q. R. Co. v. MILLS Co.

1. **Municipal Corporation**: COMPROMISE BY COUNTY: SWAMP LANDS. A county possesses the power through its proper officers to compromise pending litigation involving the title to its swamp lands, and it cannot afterwards set up the fact, in order to defeat the compromise, that the lands in controversy were swamp and that it therefore had no power to convey them as provided by the terms of the compromise.

2. ———: ———: ———. An adjudication in the District and Supreme Courts of the State that the lands were swamp was not conclusive of the fact, pending the decision of the Supreme Court of the United States, to which the case had been appealed.

3. ———: ———: ———: CONSIDERATION. The county having agreed in the compromise to convey to the railroad company all the lands the latter claimed except a certain specified number of acres reserved, in lieu of which it offered ten thousand dollars in money, it could not afterwards plead that the compromise was invalid on the ground that the company obtained by the compromise all it sought by its suit, until it had been shown that the excepted lands were worth no more than ten thousand dollars.

4. ———: ———: ———: ———. It was a condition of the settlement that the railroad company should construct its road through Mills county and should locate a station at Glenwood. By the act of Congress conferring a grant of land upon the company, it was required to extend its line to a point on the Missouri river near the mouth of the Platte river, and this point would necessarily be in Mills county: *Held*, that the company was not bound by the act of Congress to run its line by the way of Glenwood or locate a station there, and an agreement to do so constituted a valid consideration for the agreement to compromise.

5. ———: ———: FRAUD. The running of "scare lines" by the railroad company would not constitute fraud invalidating the settlement, in the absence of proof that the lines were run where the company had not a legal right to locate its line.

*Appeal from Mills District Court.*

FRIDAY, OCTOBER 19.

THE action first above named was brought to set aside certain deeds executed by the plaintiff, Mills county, to the defendant, the Burlington & Missouri River R. Co. The

Chicago, Burlington & Quincy R. Co. and others are made defendants as claiming title through the Burlington & Missouri River R. Co.

The action last above named was brought by the Chicago, Burlington & Quincy R. Co., to recover of Mills county the sum of ten thousand dollars. Both claims originated in the same transaction, and the two cases are submitted together. Between Mills county and the B. & M. River R. Co. a controversy arose in regard to the title to certain land. This controversy after considerable litigation was finally terminated by an agreement whereby the railroad company relinquished its claim to a portion of the land, and the county conveyed to the company the remainder and agreed to give the company the sum of ten thousand dollars. The question in the case is as to the validity of the agreement, and the conveyance made in pursuance thereof. Its validity is denied by the county and asserted by the two said companies. The land in controversy was claimed by the county as swamp land under the act of Congress approved September 28, 1850. It was claimed by the B. & M. River R. Co., under the act of Congress granting certain land to aid in the construction of railroads, approved May 15, 1856. The amount involved is about 23,316 acres. An action was brought by the county in the District Court of that county against the B. & M. River R. Co., to quiet its title to the land. A decision favorable to the county was obtained in the District Court and affirmed in this court. An appeal was then taken by the defendant to the Supreme Court of the United States. It was while the appeal was pending in that court that the said agreement for a settlement was made. The agreement was also at that time partially executed. The land to be conveyed by the county was conveyed, but the money which was to be paid has not been paid. The county avers in substance, in its petition in the one case, as ground for canceling its conveyances, and in its answer in the other case, as ground of its non-liability for the money claimed, that the agreement for a settlement was obtained by fraud; that it was *ultra vires*, and was without consideration. The agreement is in these words: "In order to settle and finally adjust the law-

suit now pending in the Supreme Court of the United States, wherein Mills county, in the State of Iowa, is plaintiff, and the Burlington & Missouri River Railroad Company is defendant, and secure the completion of said road through Mills county by the way of Glenwood, in said county, we, the authorized agents of said county, submit the following proposition to the board of directors of said railroad company, to-wit: There are in dispute between the parties to said lawsuit twenty-three thousand three hundred and sixteen acres. For the purpose of having our proposition understood, we acknowledge that we owe you acres of land to the amount of 23,316. · To pay which we have and offer you odd sections vacant (most of which is a part of the 23,316 acres) and even sections patented to the county and unsold, in the aggregate 9,080 acres; balance of the land due you, 14,236 acres. For further payment we have and offer you of the odd sections, about all of which is of the 23,316 acres claimed by you subject to pre-emption made through the county, acres to the amount of (on which nothing has been paid to the county) 4,660. Of these pre-empted lands we estimate that about one-half of the pre-emptions are fraudulent and ought not to be recognized, but the county must ask that where *bona fide* improvements have been made on the same the pre-emptors must be secured in their right to the same, and have the privilege of purchasing at $1.25 per acre of the county or company, which amount shall in any event go to the company. Now, you will have land for land, subject only to the pre-emptors' claims, until there will be due you in acres 9,576. The remainder, 9,576 acres, belong to *bona fide* settlers and purchasers, who, we must insist, shall be protected by the county. And as we have paid you all the land we have we offer for this balance ten thousand dollars in money. The company should understand that the balance of 9,576 acres is the land, portions of which it has been settling with our individual citizens for, and there is included in this 9,576 acres all the lands the company has sold to citizens and settlers at $1.25 per acre. With this understanding the $10,000 we offer you will be for just as much less than 9,576 acres as the company

has thus sold, and, therefore, our pay would perhaps amount to $1.50 or more. ·

"It is understood that the suit now pending shall be continued by agreement of parties from term to term until the conditions of the contract or proposition shall have been complied with.

"It is also further understood that the foregoing proposition shall not be binding on the county of Mills unless said railroad company shall complete said railroad through Mills county *via* Glenwood, and build a depot at Glenwood, in that county, and in case said railroad company shall fail or neglect to build said railroad through Mills county by the way of Glenwood, and also to build and establish a depot at Glenwood, in said county, then in that event the said lawsuit shall stand for final hearing in the Supreme Court of the United States the same as if this proposition had never been made. In case the suit shall be settled on the basis of this proposition, each party shall pay their own costs. The manner of transferring the land, whether the county shall deal with the purchasers or pre-emptors, or whether the railroad company under the restrictions indicated, the county is not particular about, but will agree to what may seem most practicable. The amount in acres, as stated above, may not be exactly correct, and probably is not, but it is believed to be nearly so, but we wish it understood that the company shall have all the swamp lands the county now holds, or is entitled to, in Mills county, Iowa, subject only to the conditions indicated in the foregoing.

"Witness our hands this July 13, 1868.

(Signed) "WM. HALE," and others,<br>"<em>Committee.</em>"

This proposition was accepted by the company and ratified by the board of supervisors of the county. Other facts are stated in the opinion. Judgment for the defendant in each case. The plaintiff in each case appeals.

*D. H. Solomon, C. B. Lawrence,* and *Lewis W. Ross,* for the County.

*Hale, Stone & Proudfit, O. H. Browning, J. M. Walker,* and *Kelley Bros.,* for the Railroad Companies.

ADAMS, J.—These cases have been presented with the learning and ability commensurate with their importance. The questions involved may be considered first as to whether the county had the power to make the compromise agreement; and second, if it had such power, whether the agreement is void by reason of fraud on the part of the Burlington & Missouri River Railroad Company, or for want of consideration.

The first proposition made by the county is that the lands were in fact swamp lands. Having established this proposition, as it claims, it maintains that the county could not, under the statutes then in force, devote the lands to the making of a railway through the county unless authorized by a vote of the people of the county; that by the agreement in question the lands were devoted to the making of a railroad through the county, and that the same was not authorized by a vote of the people of the county.

It appears to us that if the county had the power to make a compromise, and if the agreement in question was a compromise, the county cannot now be heard to say that the land was swamp land, and that the county could not for that reason make the agreement in question. As to whether the land was swamp land was the very question in issue. That is precisely what the parties agreed not to test in the court of ultimate resort. It is not, therefore, for us to say that the land was swamp land. The fact that it was so held by this court was not conclusive. The question was still an open one, and the agreement for a settlement made while the case was pending in the Supreme Court of the United States was virtually an agreement that the question should remain an open one forever. Most certainly the county cannot be permitted, after having obtained an agreement from the company to waive its right to ask the Federal Supreme Court to correct the error in this court, to insist in this court that the very ruling complained of was correct. As between the parties, then, to that agreement, if the county had the power to make a compromise, and if that agreement was a compromise, this court will not hold that the land was swamp land.

We come next to consider the question as to whether the

county had the power to make a compromise. That the county
had such power we think was substantially held in

1. **MUNICIPAL corporation: compromise by county: swamp lands.** *Allen v. Cerro Gordo County*, 34 Iowa, 54, and in *Grimes v. Hamilton County*, 37 Iowa, 298. In the latter case it was held that an action brought to recover for services in securing the title to swamp lands might be compromised by the defendant county by a conveyance of a portion of the land.

It is claimed, however, that where a county is a party to an action involving the question of title to swamp lands, or lands alleged to be swamp lands, the county has no power to compromise such action. It is said that the county holds such land in trust, and that a trustee must assume the validity of the title to the trust property and act accordingly. But a trustee, in the exercise of a reasonable discretion, may certainly compromise debts. *Blue v. Marshall*, 3 P. Wms., 381; *Radcliffe v. Winch*, 17 Beav., 216. And we have no doubt that in the exercise of such discretion he may compromise any action whatever. A municipal corporation may compromise claims. *Augusta v. Leadbeater*, 16 Maine, 45; *Bean v. Jay*, 23 Maine, 117; *Petersburg v. Mappin*, 14 Ill., 193.

The general power of the county to compromise even where a question of title to alleged swamp lands is involved does not,

2. ——: ——: —— indeed, seem to be very seriously denied by the counsel for the County. They insist mainly that such power could not be exercised under the peculiar circumstances of this case. Great stress is laid upon the fact that at the time of the compromise there had been an adjudication in favor of the county, not only by the District Court, but by this court. So long, however, as the action was still pending, it was as much the proper subject of compromise as if no decision had been made.

Another objection taken is that the agreement was not a compromise. It is said that it was a total surrender by the county to the claims of the company. But the county did not agree to convey to the company all the land which the company claimed. It expressly excepted 9,576 acres. This would show, of course, that the agreement was a compromise were it not for

the fact that the county agreed to pay the company ten thousand dollars.

The land excepted, it appears, had been conveyed to settlers. The county was anxious to protect them. It became necessary,

3. ——: ——: therefore, to reserve in the settlement the land which ——: consideration. had been sold them. Instead of this land the county offered to give the company ten thousand dollars. The precise language used is as follows: " We offer you for this balance (the 9,576 acres) ten thousand dollars in money." The fact that the land claimed by the company was not all conveyed to the company would not show a compromise if it was understood by the parties that ten thousand dollars was the value of the land excepted. The proposition as made by the county was nominally based upon the theory that that was the value, but there is nothing to show that such was the real understanding of the parties. It is easy to suppose that both parties knew well that the land excepted was worth more than ten thousand dollars. Before we should be justified in setting aside the agreement upon the ground that the company obtained all it claimed — the identical lands in part, and for the remainder an equivalent — the county should satisfy us that such was the fact.

And even then we should have to inquire further, and determine whether some valuable consideration did not move to the county by which the agreement could be supported as a compromise. The surrender of the whole of a disputed claim is not the less a compromise if something is paid for the surrender. In this case we find that the company agreed to build its railroad through the county by the way of Glenwood, and establish a depot at Glenwood. Whether the county could devote swamp lands, or not, to the building of a railroad without a vote of the people, it might compromise a *disputed claim* for swamp lands in consideration of the building of a railroad without a vote of the people. Before we could hold that such an agreement is prohibited, we should need to ascertain and determine that the claim in question was a valid one. But the county, as we have seen, cannot ask such a determination because it has agreed for a consideration that the question shall remain undetermined.

This brings us to consider another position taken by the county, and that is that what the company agreed to do was $\frac{4. \quad : \quad}{\quad : \quad}$ no consideration, because it only agreed to do what it was under a necessity of doing before the agreement was made. By the act of Congress of May 15, 1856, the land granted was to aid in the construction of a railroad "running from Burlington on the Mississippi river to a point on the Missouri river near the mouth of the Platte river." Mills county is on the Missouri, and the mouth of the Platte river is opposite the county. It is claimed, and perhaps properly, that the road could not terminate near the mouth of the Platte river without running through Mills county. Did the company, then, do anything which it was not under a previous necessity of doing? It agreed to build its road by the way of Glenwood, and we think it might have built its road by some other way. It is true the road had been surveyed by the way of Glenwood, and a map of the survey had been duly filed. The route, we think, had been "definitely fixed" within the meaning of the act of Congress making the grant. Whether after that any substantial change could be made in the route, we need not determine. Slight variations might be made. Sec. 6, Chap. 1, Extra Session, Laws 1856. Possibly only such could be made as should be demanded by proper engineering. But if only such could be made, we cannot say that the company was under the necessity of running by the way of Glenwood. What the facts are in that respect the record does not disclose. Possibly the road could have been run some other way with less expense, and that too without any substantial change of route. As between these parties, we think the presumption is that the company was not under the necessity of building its road by the way of Glenwood. The county took pains to stipulate for such location. If it was stipulating for the inevitable, it is for the county to show it. We are of the opinion that the county has failed to produce the requisite evidence in this respect.

In addition to the location of the road by Glenwood, the company agreed to establish a depot at Glenwood. This may have been of no benefit to the county, but as the county stipu-

lated for it we think that we must presume that it was.
Besides, the company agreed to pay one-half of the costs in the
suit, and this alone was a consideration.

The fraud alleged to have been practiced upon the county
by the company is said to have consisted in certain statements,
and in certain acts. Considerable testimony was introduced
for the purpose of showing statements made by mere employes
of the company to certain individuals. In our opinion, such
evidence is not entitled to any weight. The statements more
especially relied upon as fraudulent were those of the presi-
dent of the company, made to a prominent citizen, and former
officer of the county. The statements were that "he did not
know whether the road would go through Mills county; that
the company hated to run a road through the county when the
people were fighting them." If we should conclude that the
president did know that the company would run its road
through Mills county, it would be for the reason that he must
have known that the company could not legally run its road
elsewhere, and we should be obliged to conclude that the
county knew it for the same reason. We are of the opinion
that the evidence fails to show any such statements on the
part of the officers of the company, or any persons authorized
to speak for the company, as would justify us in setting aside
the agreement on the ground that the statements were fraud-
ulent.

The fraudulent acts relied upon consisted in running what
the counsel for the county call "scare lines." Upon this point
we think it may be said that if the company had
a legal right to run its road upon those lines the
evidence is insufficient to show that they were run as "scare
lines." If it had no legal right to run its road there, the
county was not justified in being scared. We see nothing,
then, in what was said or done, which appears to us to amount
to fraud.

We have assumed thus far that the agreement for a com-
promise was not abandoned by the company, but was carried
out on its part. But the county contends that it was aban-
doned. To show that it was, the county put in evidence the

docket entry of the Supreme Court of the United States made in the case in which the alleged compromise was made, which entry shows in effect that the case came on to be heard, and was argued by counsel, and that the decree of the Supreme Court of Iowa was affirmed. To rebut that evidence, the company introduced the testimony of the attorneys of the defendant company in that case. From it, it appears that nothing was done by the attorneys of the defendant company in that case in the Supreme Court of the United States, except to file printed briefs, and that if they were filed after the compromise was made they were filed in ignorance of the compromise. The counsel for the company did not appear personally in court. One of them, speaking of the compromise, says: "No attention was thereafter given by counsel for defendant to the case, as the matter was supposed to be compromised."

Properly, of course, the appeal should have been dismissed; but that was neglected. The briefs which were filed remained on file. When the case was called, the court doubtless regarded it as for submission. But we see nothing in this which satisfies us that the company abandoned the compromise, or that either party did anything upon the supposition that the compromise had been abandoned.

The judgment of the court below in the case of *Mills County v. The Burlington & Missouri River R. Co. et al.* must be affirmed, and the judgment in the case of *The Chicago, Burlington & Quincy R. Co. v. Mills County* must be

REVERSED.