JEFFERSON COUNTY v. THE BURLINGTON & MISSOURI RIVER R'Y CO.

WAPELLO COUNTY v. THE SAME.

1. **Accommodation Paper**: DEFINITION STATED AND APPLIED: COUNTY BONDS ISSUED ULTRA VIRES. An accommodation bill or note is one to which the accommodating party has put his name, without consideration, for the purpose of accommodating some other party who is to use it, and is expected to pay it. The definition is analyzed and applied in this case in considering the character of certain bonds issued by the plaintiff counties to the defendant corporation, in part payment for a subscription to the corporation stock, pursuant to contracts supposed at the time to be valid, but afterwards adjudged to be *ultra vires*; and the bonds are *held* not to be accommodation paper.

2. **Statute of Limitations:** COUNTY BONDS ISSUED ULTRA VIRES FOR RAILROAD STOCK: ACTION TO RECOVER MONEY PAID ON. The plaintiff counties, pursuant to a vote of the electors, each agreed to take stock of the defendant corporation to the amount of $100,000, to be paid in county bonds. Each of the counties issued to the defendant, under the contract, its bonds to the amount of $30,000, payable to defendant, or bearer, which the defendant negotiated to innocent holders, and the plaintiffs were adjudged liable to pay, and did pay, the same. After the $30,000 in bonds had been issued by each of the plaintiffs, it was adjudged that the contract was *ultra vires* on the part of the counties, and no more bonds were issued to defendant. No stock was issued by defendant to either of the counties, and it was adjudged that the counties could not recover such stock, because the contracts were *entire*, and no stock could be demanded until the whole amount of bonds in each case should be issued. The counties in these actions sue to recover of the defendant the money paid by them severally upon the bonds actually issued, upon the ground that the bonds were, in effect, accommodation paper, which defendant, and not plaintiffs, were primarily liable to pay. *Held* that, if plaintiffs ever had any right of action on the grounds alleged, it accrued immediately upon the delivery of the bonds to the defendant, and not upon the payment of the money to the innocent holders of the bonds; and that the causes of action were barred after five years from the delivery of the bonds to the defendant.

ADAMS, J., and BECK, CH. J., *dissenting*.

## Appeals from Des Moines Circuit Court.

### SATURDAY, JUNE 6.

ACTIONS AT LAW. Judgment for defendant, and plaintiffs appeal. The facts are stated in the opinion.

*D. P. Stubbs, Hall & Huston, H. B. Hendershott* and *Stiles & Beaman*, for appellants.

*David Rorer*, for appellee.

SEEVERS, J.—When these causes were submitted, it was stated by counsel that they were substantially alike. They were submitted together, and will be so considered. The petitions are substantially alike. The grounds upon which a recovery is asked are the same, and, as stated in the petitions, are

1. ACCOMMO-DATION paper: definition stated and applied: county bonds issued ultra vires.

as follows: That plaintiffs "at the request of the defendant made and executed and delivered to it the following described accommodation paper, viz.: Thirty promissory notes or bonds, made, executed and delivered by plaintiffs to the defendant for the sum of one thousand dollars each, payable to the defendant or bearer, * * * twenty years after date, with interest at the rate of eight per cent, payable annually. And said defendant, having received said accommodation paper at its own request and for the purpose of procuring means to use in its own behalf, use and benefit, placed the same upon the market," and negotiated the same, and appropriated the proceeds to its own use. The bonds were executed and delivered in 1885; and it is stated in each petition that the plaintiff therein was compelled to and did pay the principal and a large amount of interest on said bonds. That "all of said sums (of money) have been paid by the plaintiff for the use and benefit of the defendant," for which judgment is asked by each plaintiff.

In the Jefferson county case, the defendant pleaded, in addition to a general denial, *first*, that said bonds were issued without authority, and were *ultra vires*, and therefore no action could be based thereon, or a recovery of the money claimed be had; *second*, the statute of limitations; *third*, that the payments made by the plaintiff were voluntary; and, *fourth*, that the bonds were issued in consideration that defendant would locate its road and construct the same within a reasonable time through Jefferson county, and make Fairfield a point thereon.

In the Wapello county case, the defendant pleaded a general denial, a former adjudication, the statute of limitations, and that the bonds were issued without authority, and the payments made were voluntary. There is practically no dispute as to the facts.

In 1853 the proper officer caused to be submitted to the electors of each of the plaintiffs a proposition whether they would each subscribe one hundred thousand dollars to the

capital stock of the defendant, on condition that the defendant's road should be located, in the first case, by Fairfield, in Jefferson county, and in the other, by Ottumwa, in Wapello county. The subscription was to be paid in bonds issued by each of the plaintiffs. A majority of the electors voted in favor of the proposition, and the subscription was made. Thirty thousand dollars of the bonds were issued by each of the plaintiffs, and delivered to the defendants, by whom they were negotiated to innocent holders, who brought actions thereon in the federal courts, and a recovery was obtained. It is these bonds that the plaintiffs paid, with accruing interest thereon; and they seek in these actions to recover the amount so paid of the defendant.

At the time the electors accepted the proposition, made the subscription, and delivered the bonds, the transaction was regarded as legal and binding by all parties thereto. *Dubuque County v. Dubuque & P. R'y Co.*, 4 G. Greene 1; *The State v. Bissell*, Id., 328; *Clapp v. Cedar County*, 5 Iowa, 15; and *Stokes v. Scott County*, 10 Id., 166.

The plaintiffs declined to issue any more bonds, or otherwise pay the amount subscribed, and the defendant brought an action to compel Wapello county to issue the remaining bonds in payment of its subscription. This action was determined by this court in 1862, and it was held that counties did not have the power to subscribe for stock in railway companies and issue bonds in payment therefor. *The State, ex rel., etc., v. Wapello County*, 13 Iowa, 388. The cases above cited were overruled.

Afterwards Wapello county brought an action to compel the defendant to issue thirty thousand dollars of stock, that being the amount of bonds delivered as aforesaid. This action was determined by this court in 1876, and it was held that the contract of subscription was entire and indivisible, and, as the county had failed to issue bonds, or otherwise pay the whole amount subscribed, the defendant could not be compelled to issue stock for any less amount than that subscribed.

*The County of Wapello v. Burlington & M. R. R'y Co.*, 44 Iowa, 585.

In 1877 the present actions were commenced, and the first inquiry which naturally arises is, can the plaintiffs recover on the grounds stated in the petitions—that is, can the bonds be regarded as accommodation paper?

I. "An accommodation bill or note is one to which the accommodating party has put his name without consideration, for the purpose of accommodating some other party who is to use it, and is expected to pay it." 1 Daniel Neg. Inst., § 189. Did the plaintiffs, when the bonds were delivered, expect the defendant to pay them, or did the defendant expect to do so? There is not a particle of evidence which even tends to show such an expectation. The subscription was made and the bonds delivered in pursuance of a vote of the electors, and the proposition accepted by the electors provided that a special or an additional tax should be levied and collected for the purpose of paying the bonds. There was not the most remote expectation that the defendant was to pay the bonds, but, on the contrary, the intent of both parties was that they should be paid by the plaintiffs. As to this there is no doubt. Now, can the requisite expectation be implied, or can there be a promise implied simply because the plaintiffs had no authority to issue the bonds? The parties were acting in the utmost good faith, and the bonds were issued and accepted under a mistake of law, which, under the circumstances, is not surprising.

There is no evidence tending to show that the defendant would have accepted the bonds if the expectation had been that it would pay them at maturity, together with annual interest. It may be conceded that the plaintiffs were not indebted to the defendant at the time the bonds were delivered, and yet it does not follow that a promise should be implied that the defendant was to pay them. The defendant received the bonds in payment of what both parties supposed was a valid subscription to the capital stock of the defendant.

The subscription was in fact invalid because the plaintiffs had no authority to issue bonds for such a purpose. This was a mutual mistake of law, and ordinarily in such cases the parties are remediless. But now the plaintiffs say, because of such mistake, that the expectation was in the beginning that the defendant was to pay the bonds; and that a promise to that effect can and should, under the circumstances, be implied. We do not think this is so, and no authority has been cited which so holds. The defense of a failure of consideration may be successfully pleaded in an action on a bond or note, but it does not by any means follow that such bond was issued for the accommodation of the party to whom it was delivered. The essence of accommodation paper is that the person accommodated is, as between the parties, bound to pay it. This obligation must be based on a contract, either express or implied. So far from there being such a contract, the evidence in the present case shows that no such contract existed. The burden in this respect, it must be remembered, was on the plaintiffs.

II. But were the bonds issued without consideration? It is claimed that the plaintiffs received no consideration, because the bonds and subscription were void. Conceding this, it does not follow that the plaintiffs received no consideration or advantage, although the contract was void. Nor is it material whether the consideration was adequate or not. The bonds on their face show that they were issued under authority of a vote of the electors of each of the plaintiffs, authorizing the proper officer to subscribe to the capital stock of the defendant, and issue stock therefor. The proposition accepted by the electors provided that the road should be located as above stated. The road was located and constructed in accordance with such proposition. If the contract had been valid, and the defendant had performed it in every respect, except to locate and construct the road in accordance with the proposition, it could not have maintained an action on the bonds. *Burlington & M. R. R'y*

*Co. v. Boestler*, 15 Iowa, 555; *Thompson v. Oliver*, 18 Id., 417; *Courtright v. Deeds*, 37 Id., 503; *Cooper v. McKee*, 49 Id., 286, and 53 Id., 239;—the reason being that the plaintiffs could have successfully pleaded that the consideration had failed. On the other hand, had the contract been valid, and the defendant fully performed it, then it could have recovered on the bonds, and the defendant could not have successfully pleaded a failure of consideration.

In *Mills County v. Burlington & M. R. R'y Co.*, 47 Iowa, 66, in consideration of the defendants agreeing to construct its road through Mills county and locate a station at Glenwood, the plaintiff agreed to pay ten thousand dollars. In that case it was said by ADAMS, J.: "Possibly the road could have run some other way with less expense, and that, too, without any substantial change of route. As between these parties, we think, the presumption is that the company was not under the necessity of building its road by the way of Glenwood. The county took pains to stipulate for such location. If it was stipulating for the inevitable, it is for the county to show it;" and it was expressly held that the location of the road formed a consideration for the agreement to pay. It must follow in the case at bar that the location and construction of the road were a consideration for the issuance of the bonds. It will not do to say that the road was not located and constructed in accordance with the contract; because the bonds on their face import a consideration, and the burden to show that there was no consideration was on the plaintiffs, and they have failed to show that the road was not located and constructed because of and in accordance with the contract. Besides this, the evidence does show that the road was constructed through each county, and by Fairfield and Ottumwa.

Doubtless extreme cases may be supposed where the unauthorized acts of county officers would not be binding on a county. But such cases do not in our opinion constitute either a fair argument or illustration of the principle involved.

It may be said that the plaintiffs are public corporations, and that the defendant was bound to take notice of such powers as had been conferred upon them. It may be that *McPherson v. Foster Bros.*, 43 Iowa, 48, so holds. But suppose in that case the bonds issued had been paid by the school district, and it had brought suit to recover the money so paid,—could the action have been maintained because the bonds were issued in violation of a constitutional provision? If so, the district would have the school house that was erected with the proceeds of the bonds without having paid anything therefor. Such an act of injustice cannot be tolerated in a court of justice. No case to our knowledge has gone so far, and counsel do not so claim. For it is said by one of the distinguished counsel: "The case is peculiar, and *sui generis*, and no decisions can be found that illustrate it. It must be decided upon principle and first impressions."

The contract was entered into by the electors. There was no deception, and it did not involve moral turpitude. Similar contracts had been declared valid and binding by the court of last resort. The defendant was therefore justified in believing it to be a binding contract. It can hardly be said that it was bound to know that the court would hold a contract invalid when similar contracts had been held valid, unless there was a change of circumstances. If there is any case where a recovery cannot be had where there has been a mutual mistake of law, it would seem that this case is clearly within the rule.

The stock agreed to be issued undoubtedly formed a part of the consideration for the issuance of the bonds. It was not the fault of the defendant that the plaintiffs did not receive the stock. On the contrary, the defendant commenced an action to compel one of the plaintiffs to deliver the bonds. Had they done so, they would have been entitled to the stock. The defendant could do no more. It fully performed on its part.

Having found that there was a consideration for the issu-

ance of the bonds, it follows that they cannot be regarded as accommodation paper, and therefore the plaintiffs cannot recover.

AFFIRMED.

ADAMS, J., *dissenting.*—I think that the plaintiffs are each entitled to recover. The two cases differ but little from each other. They might properly enough be discussed together. Whatever can properly be said of one might generally, with equal propriety, be said of the other. For convenience and brevity, however, I will treat mainly of the case of Wapello county.

The right of recovery is denied by the defendant upon various grounds. By the majority of this court it is denied upon the alleged ground that the plaintiff received a benefit from the construction of the road by the way of Ottumwa. But in my opinion, this does not constitute a defense. It is not pleaded as a defense, nor is there anything in any part of the pleadings having any tendency to show where the road was constructed. The defenses pleaded are prior adjudication, the statute of limitations, and that the payment was voluntary. To justify the defendant in relying upon the fact that the road was constructed by the way of Ottumwa, (if such fact could in any event be deemed of any significance,) the defendant should, I think, not only have pleaded it, but should have pleaded that the road was so constructed as a part of the contract in pursuance of which the bonds were issued. I do not think, indeed, that such fact, even if pleaded, would constitute a defense. But, if I am wrong in this, I do not think that the defense, if made, could be sustained, because I am unable to find any evidence that the defendant constructed its road by the way of Ottumwa *as a part of its contract*. To this question of fact I will refer hereafter. For the present, let us suppose that the defendant had made such proof, and let us suppose, also, that it had laid the foundation for it by a proper averment in its answer.

We come, then, to the question as to whether the plaintiff should, for that reason, be denied all right of recovery. If it can be, it is not because the plaintiff has received the full consideration for the bonds. It was to have stock in the defendant company of equal amount. It has received no part of the stock, and the defendant has escaped all liability for its issue. If, then, the plaintiff must be denied all right of recovery upon the ground above supposed, the rule of law is that the receipt by a corporation of a part of the benefit of an *ultra vires* contract, however small the part may be, estops the corporation from setting up that the contract is *ultra vires*. Now I know of no decision which has gone so far. It will be observed that there is no question in the case of a *retention* of benefit by the plaintiff. It has nothing which it could restore, and never had. If it is estopped, it is simply by reason of the construction of the road, and nothing more; and that under no pretense could constitute more than part of the benefit. It was to have thirty thousand dollars of stock which it has not received, and never will receive. Does, then, the mere receipt by a corporation of a part of the benefit of an *ultra vires* contract, independent of any question of voluntary retention, estop it from setting up that the contract is *ultra vires?* I think not. Such rule would be bad enough as applied to a private corporation. But, as applied to a municipal corporation, it is still' more objectionable. If such is the law, I do not see what protection there is for tax payers. If a loss of thirty thousand dollars can be imposed, as in this case, as the result of mistaken and unauthorized acts, a loss of any amount, however large, might be.

Decisions can be found where courts have held that the receipt by a corporation of even the *whole* benefit of an *ultra vires* contract does not estop it from setting up that the contract is *ultra vires*. I think that was virtually held in *McPherson et al. v. Foster Bros.*, 43 Iowa, 48. But we do not need to go that far. If the plaintiff were a private cor-

poration, we probably could not go that far. *Thompson v. Lambert*, 44 Iowa, 248. But such question is not before us. The plaintiff is a public corporation, and has received, at most, only a part of the benefit, and that is of such a character that it cannot be restored. The case to my mind is not more favorable to the defendant than one where county officers should, for the purpose of encouraging manufactures, offer a large *bonus* for the establishment of a manufactory, and pay the same out of the county treasury. Does any one doubt that money so paid could be recovered by the county, and especially if the county officers contracted for a fractional interest in the manufactury in behalf of the county, and which interest the proprietors refused to convey? I think that no one would say that the benefit received by the county would stand in its way. I do not care to insist that the county *in its corporate capacity* could not receive a benefit of such a character, nor even that the tax-payers could not, if what was paid for was mere *location*, as at the county seat instead of somewhere else in the county. Such position might be tenable enough, but I do not need to resort to it. Let us make a supposition where there would be no doubt as to the benefit received. If county officers should conceive the idea of going into a speculation in grain in behalf of the county, and should buy a thousand bushels, and pay for the same out of the county treasury, and should receive only one bushel, but should sell that and put the proceeds in the county treasury, the receipt of the one bushel should not prevent the county from recovering the money wrongfully paid out, and for which it received nothing. If the county should bring an action to recover the whole, it may be that the defendant should be allowed to aver and prove the amount delivered, and value thereof, by way of reduction of the plaintiff's damages. I do not think that any court has gone further than this. My attention, it is true, has not been called to any case especially supporting the limitation upon which I insist, but it is clear to me upon principle, and has been

inferentally recognized in *Hayes v. Galion Gaslight Co.*, etc., 29 Ohio St., 330; *Grant v. Henry Clay Coal Co.*, 80 Pa. St., 208; and *De Groff v. Am. Lin. Th. Co.*, 21 N. Y., 127.

This is not a case for punishing the county and rewarding the railroad company. It is no case for punishment on the ground that the county should have known its own powers. Doubtless it should, but it is not for the company to say this. The county is a public corporation, and the company also should have known its powers. *McPherson et al. v. Foster Bros.*, above cited. They dealt with each other with equal knowledge. Nor has the company in fact, though mistaken, been misled to its injury. What it has done it has done for itself, and has the full benefit of it. I do not say that what it has done could not be sufficient as a technical consideration to support a contract otherwise unobjectionable. It may be conceded that it would be. *Mills County v. Burlington & M. R. R. Co.*, 47 Iowa, 66. But that is not the question before us. We do not even have the question as to the *measure* of the benefit received by the plaintiff. The theory of the majority opinion is that it is immaterial how small the benefit may be—that, however small, the company ought to have the benefit of the county bonds, and escape all liability on its part.

The benefit to the county in its corporate capacity, I think, is nothing. But regarding the county in its corporate capacity as identical with the tax payers, it is manifest that the benefit is one which could not be measured. I do not see then that the defendant's position would have been improved by any averments which it could have made in its answer upon this point.

If I am correct in my view of the law, it is wholly unnecessary to inquire whether the company built its road by Ottumwa under any contract with the county to do so, or in acceptance of the contract under which the bonds were issued. But I have discovered no evidence that any person, either with or without authority, attempted to make any agreement

on the part of the company to build the road by Ottumwa, or that the company did not build the road precisely where its interest required, and where it would have built it independent of any contract with the county.

The pretended partial execution of the *ultra vires* contract is the only point which I care to discuss. I think it would have been sufficient, so far as the Wapello county case is concerned, to have said that this is not pleaded.

In the Jefferson county case, the defendant avers in its answer, in substance, that it contracted with the plaintiff to build its road through the county, and that it did so build it. This seems to be pleaded by way of estoppel, and as a complete defense. I have given my reasons why I think that it cannot be so regarded.

As a partial defense, or ground of allowance to the defendant, it must be said that there is a total absence of both averment and evidence. As a further defense to both actions, the defendant insists that, even if the plaintiffs have a cause of action, it is not that set out in the petition and proven by the evidence; and that a recovery should be denied for that reason, if no other; and in this the defendant is sustained in the majority opinion.

The plaintiffs set out the issuance of the bonds, the negotiation of them by the defendant, the payment of them by the plaintiffs; and they aver that they were issued and paid for the use and benefit of the defendant; and these facts are, I think, substantially proven.

It is not material to inquire with what degree of propriety the bonds can be called accommodation paper. The right of recovery, if it exists, depends upon the facts averred and proven. Now, the facts are that the bonds were issued under such circumstances that they had no validity as between the parties, and acquired no validity until they were negotiated, and then acquired their validity solely by reason of the fact that they were negotiated; and, as between the plaintiffs and defendant, the latter was under obligation to protect the for-

mer, which it has failed to do. Where one person executes paper which has no validity until it is negotiated, and where the party receiving and negotiating it has the sole benefit of it, such paper has the essential characteristics of accommodation paper, though it were not designed as such paper originally.

It may be that the defendant would not have received this paper knowingly as accommodation paper. That does not change the fact that it has had the sole benefit of it, and, having had such benefit, it is not for it, I think, to set up its ignorance of the law, to enable itself to retain this benefit, and impose a corresponding loss upon the tax payers of the plaintiff counties.

Mr. Justice BECK concurs in this dissent.

### ON REHEARING.

REED, J.—Rehearings were granted in these causes on the petitions of the plaintiffs, and they have been elaborately reargued by counsel. A majority of the court are still of the opinion that the judgments of the circuit court ought to be affirmed, but are not altogether agreed as to the grounds upon which the decision should be made. I am not fully convinced of the correctness of the view expressed in the original opinion of the majority, that the location and construction by defendant of its railroad through the counties by way of Fairfield and Ottumwa constitutes a consideration for the bonds, and I prefer to place my adherence to the order of affirmance on another ground, which to my mind is entirely satisfactory. I am willing to concede that the plaintiffs at one time had causes of action against the defendant, growing out of the transactions in question; but I am convinced that their rights of action thereon are now barred by the statute of limitations. To make apparent the correctness of this view, it is only neccessary, I think, to point out the

*2. STATUTE of limitations: county bonds issued ultra vires for railroad stock: action to recover money paid on.*

real ground of defendant's liability under the transaction. It is alleged in the petition in each case that the county issued the bonds for the accommodation of the defendant, and it was contended by counsel in argument that, as the counties had no legal capacity to enter into the contracts under which they issued them, and they were received by defendant without consideration, it became bound to protect the counties against liability thereon, or to reimbuse them for any amounts which they might be compelled to pay in satisfaction of said bonds.

It is shown by the evidence that the plaintiffs have paid large portions of the money, which they have been compelled to pay in satisfaction of the bonds and the interest thereon, within the five years preceding the institution of the suits, and it is very clear that the causes of action for those amounts would be still subsisting if the bonds were mere accommodation paper, or defendant's liability under the transaction arose out of its failure to perform an undertaking on its part to indemnify the plaintiffs against their liability on the bonds, or to reimburse them for the amounts they might be compelled to pay in satisfaction of them. But that is not the ground of defendants' liability. A definition of an accommodation note or bill is given in the original opinion of the majority, the correctness of which is not questioned. The contract between the parties to such a transaction is that the one receiving the accommodation will negotiate the paper which is executed without consideration, and will apply the proceeds to his own use; and that he will either pay it at its maturity, or reimburse the maker in case he is compelled to pay it. The liability of the party in that case grows out of the contract. A cause of action accrues in favor of the maker of the accommodation paper, only upon the failure of the other party to the contract to perform his undertaking. But that was not the character of the transaction between these parties. Each of the counties contracted with defendant for the purchase of stock in the corporation to the amount of $100,000, and agreed to pay for the same with its

own bonds for that amount. The parties to each of these contracts supposed the counties had the power to enter into the agreements. The bonds in question were subsequently delivered in that belief, and as part payment for the stock. There was no expectation or agreement that defendant would either pay them at maturity, or reimburse the counties in case they were compelled to pay them; but the real agreement and expectation of the parties when the counties issued the bonds were directly to the opposite of this. The counties expressly agreed that they would pay the bonds, at their maturity, to defendant, or whoever then might be the holders of them, and defendant received them without any agreement to indemnify the counties against them, or reimburse them for what they might be compelled to pay in satisfaction of them. The bonds, then, were clearly not accommodation paper, and the transaction in which they were issued did not have the effect to create obligations of the character of those which arise between the parties when one person executes and delivers his promissory note for the mere accommodation of another.

But the real ground of defendant's liability is this: The counties did not have legal capacity to become stockholders in a railroad corporation. The subscription to the capital stock of defendant was a contract which they had no power to make. It therefore did not constitute a consideration for the delivery of the bonds; and, as defendant received the bonds without consideration, and the contracts were executory, and were invalid solely because of the incapacity of the counties to enter into them, it was under obligation to return them, or compensate the counties for them. The general rule in this respect is well settled by the authorities. It is stated with admirable precision by the supreme court of Wisconsin, in *Northwestern Union Packet Co. v. Shaw*, 37 Wis., 656, in the following language: "When money has been paid upon an executory agreement which is free from moral turpitude, and is not prohibited by positive law, but which is invalid by reason of the legal incapacity of a party

thereto, otherwise capable of contracting, to enter into that particular agreement, the money so paid may, while the agreement remains executory, be recovered back by the party paying it in an action for money had and received."

The obligation of the party who has received the money or property to return the same, arises out of the fact that he has received it without consideration upon an invalid contract, and it arises upon the instant of its delivery to him. The right of action of the party paying the money, for its recovery, accrues at once upon its payment, and it is not dependent on the happening of any future event. The agreement between defendant and the counties was that the latter should pay their stock subscriptions in bonds, and the bonds in question were delivered under this agreement; that is, they were delivered by the counties and accepted by the defendant in payment of the subscription. By the delivery and acceptance of the bonds, the parties were placed in the same position which they would have occupied if the payments had been made in money instead of bonds. The same rights and obligations accrued by virture of the transaction which would have arisen if the counties had each made a payment of $30,000 in money on its subscription. The law at once imposed upon defendant the obligation to return to each of the counties the value of the bonds received from it under the contract, and a right of action instantly accrued in favor of the county for the recovery of that value. Under our statute of limitations, (Code, § 2529, subd. 4) an action might have been brought for the enforcement of this right at any time within five years from the time the cause of action accrued, but not afterwards. These actions were not brought within that time.

AFFIRMED.

ROTHROCK and SEEVERS, J J., concur in the foregoing opinion, but desire to say that they maintain that the original

opinion is correct, in holding that the plaintiffs have no cause of action upon which they in any event could recover.

ADAMS, J., *dissenting.*—A rehearing having been granted, the original majority opinion no longer stands as the opinion of the court, unless adhered to, and it is not stated in the present majority opinion that it is adhered to. The counties, then, were not precluded from recovering by reason of any consideration which they received in the construction of the road. We have, then, a case where county bonds were executed and delivered under a void contract for which the counties never received anything, and never can receive anything, and of which bonds the railroad company had the full benefit, and which the counties unfortunately have been obliged to pay. It is conceded now by a majority that a right of action accrued to the counties upon this state of facts. It is settled, indeed, beyond controversy that money paid under an *ultra vires* contract, and for which no consideration is received, may be recovered back. This was distinctly held in *Northwestern Union Packet Co. v. Shaw*, 37 Wis., 656, and this case is now cited with approbation in the majority opinion. But, notwithstanding the rights of the counties were at one time so clear and simple, it is thought by the majority that they must now be denied.

Mr. Justice REED thinks that the cause of action accrued more than five years before the action was commenced, and is barred by the statute of limitations. Mr. Justice SEEVERS and Mr. Justice ROTHROCK remain of the opinion that no cause of action arose at any time, because they think that a consideration was received by the counties; but they concur with Mr. Justice REED to this extent: that, if the bonds had been delivered to the company without consideration, as the majority think, a cause of action would have arisen in favor of the counties, and would have arisen at the time the bonds were delivered to the company, which was more than five years before this action was commenced. In my opinion, the

position of the majority in respect to the time when the cause of action should be deemed to have accrued, upon the supposition that the counties received no consideration, is not sound. In my discussion of the case I shall assume that there was no consideration, as the majority hold, and treat the case accordingly.

We are not concerned to inquire when a cause of action accrued to the counties, but when the particular cause of action now set up accrued. It is not to be denied, of course, that the counties, having parted with bonds which might be transferred to innocent purchasers, were entitled to have them canceled or surrendered; and this right accrued at once, although they did not so understand it at the time. So, if the company proposed to put the bonds upon the market, the counties had a right to an injunction to·restrain it. But a cause of action existing in equity by reason of such right is entirely different from a cause of action at law for the recovery of a judgment for money. Our inquiry, then, is limited to the question as to when the counties became entitled to a judgment for money. I cannot think that such right accrued immediately upon the performance of the unauthorized acts of their officers in the execution and delivery of these void bonds. As between the counties and the company, the bonds were of no more force than so much blank paper. Suppose the counties had concluded, immediately upon the delivery of the bonds, that the contract under which they were executed was *ultra vires*, and had demanded their cancellation or surrender; as the company regarded the contract as good at that time, it would, of course, have refused to comply with such demand. Now, if the counties had brought action to recover money judgments for the amount of the bonds, the court would, I think, have said, and very properly, that it did not appear that they had yet sustained any injury; and, what is more, that they could not, so long as the bonds remained in the hands of the company; that the only injury so far was a threatened

injury; and that the remedy which the counties needed was merely of a preventive character. If I am correct in this, then the present cause of action for a money judgment did not accrue immediately upon the execution and delivery of these void bonds to the company, nor while they remained in the hands of the company. After they were transferred to innocent purchasers, the situation was different. By such transfer the bonds, for the first time, were put in force. But this occurred, as I understand, at a time when it was assumed by both parties that there was no want of power on the part of the counties, or county officers, to do what they attempted. The transfer, then, by the company involved no turpitude. The counties, it is true, had wrongfully been drawn into a valid obligation, but it was the result of a mistake. The most that can be said is that an implied contract arose on the part of the company to rectify the mistake; but a complete rectification required nothing more than that the company should take up the bonds at maturity, and hold the counties harmless. This was required by good morals, and all that was required; and this, I have no doubt, was the contract which arose by implication of law on the part of the company. The sole proceeds of these bonds had gone to the company. The counties had received no benefit, and could receive none. Their paper, as it turned out, had been put upon the market for the company's sole accommodation. The issuance and transfer had no other result. As, then, between the company and the counties, it was the duty of the former to protect the latter, the obligation of the company differed in no essential respect from that of any person who has had the use of another person's paper. If I am correct in this, then the cause of the action accrued at the time of payment; and, as to some of the payments, at least, the actions were not barred at the time they were bought.

Chief Justice BECK concurs with me in this dissent.