## CITY OF SAN ANTONIO v. SAN ANTONIO STREET RAILWAY COMPANY.

### Decided November 15, 1899.

**1. Municipal Corporation—Power to Compromise Suit.**

A municipal corporation having the right to sue and be sued may compromise suits, unless restrained from doing so by some law or rule of public policy.

**2. Same—Compromise Sustained—Taxes.**

A city had claims against a street railway company for taxes, for the recovery of which suits were pending, and the company had claims against the city for street

paving, damages, etc., for which it had filed suit against the city. A compromise of all matters was agreed on, by which the company was to pay the city the full amount of the taxes, and was to receive from the city a certain sum for its claims, less than the face amount thereof,—and each party did so pay. Held, that this could not be regarded as a remission of any part of the claim for taxes; and it seems that the compromise would not necessarily have been invalid if the city had simply received the difference between the respective agreed amounts.

**3. Same—Ratification of Council Committee Action.**

A municipal corporation may ratify the unauthorized acts and contracts of its agents, such as the mayor and finance committee, which are within the scope of its corporate powers, and such ratification is equivalent to previous authority.

**4. Payment by Check—Presumption.**

Where checks given in settlement were paid through a bank by credits entered, it must be presumed that they were ultimately satisfied in the current money of the country.

ERROR from Bexar. Tried below before Hon. ROBERT B. GREEN.

*Geo. C. Altgelt* and *R. B. Minor,* for plaintiff in error.

*Houston Bros.,* for defendant in error.

JAMES, CHIEF JUSTICE.—This suit was brought by the city against defendant, the San Antonio Street Railway Company, for the recovery of city taxes for the years 1893, 1894, 1895, and 1896, and to foreclose a lien therefor.

The answer was a plea of payment, setting forth, in substance, that on May 8, 1896 (after the suit was brought), defendant paid said taxes, amounting with interest to $9940.76, and on or about May 13, 1896, paid all costs of this suit then incurred, including costs of a final judgment in the case; that notwithstanding this the city attorney filed amended pleadings herein, incurring thereby additional costs, and refused and still refuses to permit the cause to be dismissed.

On April 22, 1897, an amended petition was filed on behalf of the city, by the city attorney, which set up various matters not necessary to state in detail, concluding with a prayer for the entire amount of the taxes, and for foreclosure of a tax lien upon property of defendant. To this defendant filed a second amended answer, alleging in substance what was in the original answer; and on May 9, 1898, defendant filed a supplemental answer stating:

"That this case was settled at the time of the payment as alleged in defendant's second amended answer filed herein November 22, 1897; that said payment was duly authorized by the city of San Antonio, acting through its duly authorized officers and the council of said city; that the check by which the payment was made was collected by the collector of said city in full, and was paid by the bank on which it was drawn in money satisfactory to the city of San Antonio and its collector, and said payment was accepted and received by said city and said collector, in full satisfaction and settlement of all demands in this suit in-

volved. That defendant has found since the filing of amended answer, and will use in evidence, the original tax receipts given for said taxes, and the city received the benefits of said payment."

Exceptions were filed to the above supplemental answer on various grounds. In reference to these exceptions, we need only say that this answer does not show that the payment claimed to have been made was in anything but money, nor does it appear from the pleading that it was not in legal tender money. Hence the exceptions were properly overruled.

The merits of this case depend upon the facts. Briefly stated, they show that defendant was sued for the taxes alleged, and owed them. Pending the suit a compromise was, after certain negotiations, arranged between the defendant and the mayor and finance committee of the city, the result of which was embodied in a letter addressed by the mayor to defendant's president, and the latter's reply, as follows:

"SAN ANTONIO, TEXAS, May 8, 1896.
"San Antonio Street Railway Company, W. H. Weiss, President, City:

"Dear Sir.—As a result of the negotiations conducted by yourself, on behalf of your company, and through the finance committee and on behalf of the city of San Antonio, for the purpose of reaching a settlement of the claims your company has against said city, and those said city has against your company, and acting on the recommendation made by said committee, I submit the following proposition on behalf of the city:

"1. You are to pay to the city of San Antonio the taxes and all accrued interest to date at the rate of 8 per cent per annum, owing by your company to the city, the same being for the tax years of '92-'93, '93-'94, '94-'95, and '95-'96, amounting in all to................................. $9,940 76

"2. You are to pay to the city the amount found to be due it as per expert's report, dated March 1, 1893.............. 4,305 85

"3. The city will refund to you on account of payment made to it by you for paving on Houston Street............. 8,029 90

"On account of payment to it by you for flooring on Houston Street bridge .................................... 355 00

"On account of payment to it by you for paving on Soledad Street ......................................... 509 00

"On account of macadamizing and damage done to you on Aransas Street .................................. 1,579 80

                                                    $10,473 70
"Less an agreed deduction from said allowance of......... 2,643 99

    "Leaving a balance of............................. $7,829 71

"4. The said city of San Antonio agrees to dismiss, at your cost, certain suits pending against your company in the Thirty-seventh Judicial District Court of Bexar County, Texas, wherein the said city is plaintiff and your company is defendant, Nos. 6485 and 7265, and your company agrees to dismiss, at its own cost, a certain suit pending in the Forty-fifth Judicial District Court of Bexar County, No. 3411, wherein your company is plaintiff and the said city is defendant.

"5. It is understood and agreed that the said sum of $4306.85, being the balance as shown to be owing by your company to the said city according to the expert's report of March 1, 1893, and the taxes as above set forth, constitute all the claims the said city has against your company to this date, and that the said sum of $7829.71, as shown to be due and allowed to your company, as above detailed, shall and does constitute all the claims your company has against the said city to this date, except such as may be involved in suits Nos. 7249 and 7400, pending in the Thirty-seventh Judicial District Court of Bexar County, wherein your company is plaintiff and the city of San Antonio is defendant, said suit growing out of the construction of sewers in the city of San Antonio by said city.

[In duplicate.]                    "Very respectfully,
                                   "HENRY ELMENDORF, Mayor."


Said letter being indorsed as follows:

"The above and foregoing proposition is hereby accepted, and in pursuance thereof, we have this day paid to Henry Umscheid, Esq., collector of the city of San Antonio, $9940.76, and have received from the said city a warrant for $3522.86.
                        "SAN ANTONIO STREET RAILWAY COMPANY,
                                   "By W. H. Weiss, President."


This was on the 8th day of May, 1896, upon which day the mayor issued the railway company a warrant in regular form on the city treasurer for $3522.86. This warrant was not presented by defendant to the treasurer, but instead, the city collector, by direction of the mayor, took up this warrant and gave the defendant his check on his depository (the bank of T. C. Frost, where his collections accumulated until paid over to the city treasurer) for the amount, and upon same day, and doubtless at the same time, defendant gave the city a check on its depository (the same bank) for the $9940.76, the amount of the taxes sued for with interest. Both checks were presented that day in the usual manner, and paid by the bank, not in cash, but by proper entries on its books; the city collector soon afterward, at his next periodical payment of money to the city treasurer, delivered to the latter the deposit, and also delivered to him the said warrant as representing that much cash. Across the face of the warrant is written, "Paid, City Treasurer."

The following from the proceedings of the city council of date May 25, 1896, were in evidence:

"Regular meeting of the City Council, Monday, May 25, 1896.

"Present: Hon. Henry Elmendorf, Mayor; Aldermen Beckman, Devine, Dreiss, Fahey, Guerguin, Hoefling, Holt, Kerble, Oge, Robards, and R. B. Minor, Esq., city attorney. Absent: Alderman Robin; when the following proceedings were had, to wit:

"Special Committees: The special committee, consisting of the assessment and finance committees, to whom was referred claims of the city against San Antonio Street Railway Company, and of that company against the city, made report:

" 'San Antonio, Texas, May 25, 1896.

" 'Hon. Mayor and City Council: Gentlemen.—His honor, the mayor, having referred to the assessment and finance committees the claims of the city against the San Antonio Street Railway Company, and the railway company against the city, your committees summoned Mr. Weiss, president of the railway company, and informed him that before going into consideration of the aforesaid claims, all taxes, interest, and costs of tax suits must be paid in full. This was finally agreed to by Mr. Weiss, and the sum of $9940.76 was paid by check for the amount on T. C. Frost & Co., bankers, in full of all taxes and interest due, including year 1895-96. After several meetings, much discussion and conference with the city attorney, who was opposed to any settlement of the aforesaid claims, your committee finally agreed to recommend the following settlement:

" 'The claims of the San Antonio Street Railway Company amounted to $10,473.70; of the city against the railway company, $4306.85; balance claimed by street railway company, $6166.85; in settlement of this balance Mr. Weiss agreed to accept $3522.95.

" 'After a full consideration of the equities of both parties involved in these claims, and of the fact that their settlement disposed of a number of suits and stops vexatious and expensive litigation, your committees recommend the settlement as above stated, and beg respectfully to submit the following ordinance:

" 'Be it ordained by the city council of the city of San Antonio as follows:

" 'Whereas the San Antonio Street Railway Company has presented to the city claims aggregating the sum of $10,473.79; and whereas the city has claims against the said railway company amounting to $4306.85.

" 'Be it further ordained, that in accordance with the settlement recommended by the assessment and finance committees, the said charge of $4306.85 against said railway company be canceled upon the books of the city and the sum of $3522.86 be paid said company in addition in full settlement of all claims against the city.

" 'For this purpose be it further ordained that the following sums be and they are hereby appropriated: From the general fund, collections

of the year 1891-18£2, $1079.86; from the general fund, collections of the year 1893-1894, $864; from the general fund, collections of the year 1894-1895, $1579.80.

(Signed)    " 'J. P. Devine,<br>
" 'W. Hoefling,<br>
" 'C. Fahey,<br>
" 'Assessment Committee.<br>
" 'W. C. Robards,<br>
" 'Ad Dreiss,<br>
" 'W. Holt,<br>
" 'Finance Committee.'

"Said ordinance being adopted by the city council on same day."

The sole question is, were the taxes paid?

We think the proposition can not be gainsaid that a municipal corporation, having the right to sue and be sued, may compromise suits, unless restrained from doing so by some law or rule of public policy. It does not appear that there is any enactment depriving plaintiff of this power. 1 Dill. Mun. Corp., 477; Petersburg v. Mappin, 14 Ill., 193; Reese, Ultra Vires, sec. 195; Smith v. Wilkinsburg, 33 Atl. Rep., 371.

It may be that the city would have no power to surrender in any manner taxes levied for such purposes as interest and sinking fund, school fund, and the like. It here appears that the city by the transaction now complained of unquestionably received the difference between $9940.76 and $3522.95, to wit, $6417.81, and in the absence of anything showing the amount of taxes of the above character, or that all such taxes were not covered in the last named sum, it seems to us the court could not have ascertained that all such taxes were not in fact paid, and therefore we consider that there is no such question in this case.

If the agreement complained of had related to nothing but the claim of the city against defendant for the taxes, then it could be said that the allowance of $3522.95 to defendant was a remission of taxes, and the question would have arisen whether or not the city had power to remit taxes; but this question does not arise, because other differences were undertaken to be compromised, and benefits secured thereby to the city, to which the payment or allowance of said sum of $3522.95 may be referred.

The transaction as made was as follows: The city had this suit against defendant for taxes. Defendant had suits pending against the city. Nothing appearing to the contrary, it must be presumed that these suits were being prosecuted in good faith and upon reasonable demands. The compromise undertaken comprehended all these suits, plaintiff to dismiss the present suit, defendant to dismiss two certain suits against the city, defendant to pay $9940.76, the full amount of the taxes and interest and the costs of all the suits, and plaintiff to pay defendant $3522.80. It can not be said that the city by paying over to defendant the last named sum remitted that much of the taxes due by defendant, but

rather that it was in consideration of benefits to the city by the abandonment of defendant's suits against it.

We do not believe that any other view can be taken of this transaction, even if we regard the result of the payments by defendant and by the city as substantially amounting to a payment by defendant of the difference. If the settlement had taken another form, and had provided only that defendant pay to the city the difference, we can not see why the compromise would not have been equally valid. The defendant, however, did not plead compromise or settlement, but pleaded payment, and in view of this plea and the facts, we can find no fault with the action of the district judge in viewing the transaction as a payment to the city of the full amount of the taxes, and a payment to defendant of $3522.86 for the benefits to the city by the settlement of the suits against it.

The checks given were paid, and it must be presumed that they were paid, or ultimately satisfied, in the current money of the country.

The contention of appellant that the mayor and finance committee alone had no power to make or consummate the compromise, is correct. They were not the city. But a municipal corporation may ratify the unauthorized acts and contracts of its agents, which are within the scope of its corporate powers, and such ratification is equivalent to previous authority. Such acts, however, can not be made valid beyond the scope of corporate authority. Beach Mod. Law of Cont., sec. 1162. Compromise of existing suits was within the legitimate powers of the city. The proceedings of the council on May 25, 1896, was in our judgment a ratification and acceptance of the benefits of the transaction.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.