THEODORE OAKMAN v. CITY OF EVELETH AND OTHERS.[1]

April 24, 1925.

No. 24,672.

**Application for writ of mandamus to submit proposed city ordinance to electors.**

1. An application for a writ of mandamus to compel a city council to submit a proposed ordinance to a vote of the people, pursuant to a charter provision, will not be denied because the ordinance binds the city only, it being assumed that the parties are acting in good faith.

**City may compromise pending litigation.**

2. A taxpayer institutes a suit against former city officials to collect money for the city. The city failed to act. Yet the city may compromise and settle the pending litigation.

**When city may compromise for less than amount of its judgment.**

3. A municipality may compromise pending litigation at any time before final judgment. After final judgment a municipality may compromise and accept less than the full amount of the judgment where the debtor is not able to pay the full amount.

**Limited power of electors of city of Eveleth to adopt ordinances.**

4. Under the provisions of the home rule charter of the city of Eveleth the initiative power of the electors is limited to ordinances of general legislation and does not include administrative matters.

**Ordinance for settlement of claims in litigation.**

5. A proposed ordinance authorizing the city to settle claims involved in litigation against former officials is not legislative in character but involves a quasi judicial duty.

1. See Mandamus, 26 Cyc. p. 272.
2. See Municipal Corporations, 28 Cyc. p. 1756 (1926 Anno).
3. See Municipal Corporations, 28 Cyc. p. 1756.
4. See Municipal Corporations, 28 Cyc. p. 352 (1926 Anno).
5. See Judicial, 34 C. J. p. 1180, § 5; Municipal Corporations, 28 Cyc. p. 352 (1926 Anno).

[1]Reported in 203 N. W. 514.

Upon the relation of Theodore Oakman the district court for St. Louis county granted its alternative writ of mandamus commanding the city of Eveleth, its councilmen and clerk, to call a special election for the purpose of submitting to a vote of the people a certain ordinance. Defendants appealed from an order overruling their demurrer to the petition and writ, Hughes, J., who certified the questions presented to be important and doubtful. Reversed.

*John E. Manthey,* for appellants.

*George H. Spear, Fryberger, Fulton, Hoshour & Ziesmer* and *Boyle & Montague,* for respondent.

WILSON, C. J.

A petition, subscribed by the necessary number of electors in the city of Eveleth, proposed an ordinance asking that the same be passed or submitted forthwith to a vote of the people. The proposed ordinance provided for a compromise of certain claims of the city against nine former city officials and their sureties. Such claims are now involved in three actions, brought by a taxpayer, for the benefit of the city and are now pending in this court and involve about $135,000. The ordinance is to authorize a full satisfaction and discharge upon payment of $15,000. The city council did not pass the ordinance. It did not submit it to a vote of the people, although 25 days elapsed.

An alternative writ of mandamus was issued by the district court upon relation of a taxpayer, requiring the council to proceed to call a special election for a vote of the people upon such ordinance, or show cause why they had not done so. Defendants demurred to the petition and writ on the ground that the facts therein stated did not constitute a cause of action. The trial court overruled the demurrer, but certified that the questions presented were important and doubtful. Defendants have appealed.

1. Mandamus will not be granted where it would not avail anything. Dunn., Dig. § 5759. It is said that this proposed ordinance is invalid, and that therefore the writ should not issue; and it is claimed that, if the ordinance is passed, it will bind the city only, and that by its terms its availability is optional to the defendants.

We will assume that the petition is made in good faith and that the petitioners have sufficient reason to know that the settlement would be made if the city would join therein. At least we cannot assume, on demurrer, that the initiative movement is seeking a result that would be futile.

2. The actions are being prosecuted by a taxpayer. The city failed to act. The appellant now questions the right of the city to step in and settle the matter involved in the taxpayer's lawsuits. The determination in such actions binds other taxpayers the same as it binds the plaintiff therein, Driscoll v. Board of Co. Commrs. 161 Minn. 494, 201 N. W. 945, and cases cited. No other taxpayer could interfere by commencing another suit in the same cause of action. Note 49 L. R. A. (N. S.) 108. Neither can the city come in and successfully ask to have the action dismissed. State ex rel. Morrison v. City of Muskogee, 70 Okla. 19, 172 Pac. 796. We think, however, that where a city in good faith desires to compromise and settle pending litigation and may do so, the paramount public welfare demands that such settlement may not be hindered or thwarted by a single taxpayer, even though he be courageous in the cause of public justice. The responsibility for action or non-action in such matter must rest upon the public officials. If their action is not taken in good faith the plaintiff will have a remedy.

3. The power or authority of a municipality to settle and compromise pending litigation is challenged. Section 1, chapter 1, of the charter of Eveleth authorizes the city to sue and be sued. It would be a reflection upon justice to say that a city could sue and be sued, but that it must always carry the litigation to final judgment. The power to compromise grows out of and is incident to the power to sue and be sued. This power embraces the power to finish litigation, decide how far it shall be carried, and when and in what manner it may end. The litigation here involved includes one appeal to this court from a judgment in favor of the city and two other actions where the trial court has overruled demurrers to the complaints, but certified the questions as doubtful. It needs no authority to support the assertion that these three suits are now pending in this court. The fact that judgment was entered in the

lower court from which an appeal has been taken does not exclude them from the field of pending litigation. 5 McQuillin, Mun. Corp. § 2479; Mills County v. Burlington & M. R. Co. 47 Iowa, 66; 107 U. S. 557, 2 Sup. Ct. 654, 27 L. ed. 578. Litigation is pending in the lower court after judgment is entered until time for appeal has expired when its correctness is not conceded. Agnew v. Brall, 124 Ill. 312, 16 N. E. 230. Pending litigation is a proper subject of compromise by a municipality. It may be compromised at any time before final judgment has been entered.

There are many authorities so holding. 5 McQuillin, Mun. Corp. § 2479; note 19 L. R. A. (N. S.) 320; Farnham v. City of Lincoln, 75 Neb. 502, 106 N. W. 666; Agnew v. Brall, 124 Ill. 312, 16 N. E. 230; Orleans County v. Bowen, 4 Lans. (N. Y.) 24; Mills County v. B. & M. R. Co. 47 Iowa, 66; 107 U. S. 557, 2 Sup. Ct. 654, 27 L. ed. 578; Clough v. Verrette, 79 N. H. 356, 109 Atl. 78; Smith v. Wilkinsburg Borough, 172 Pa. St. 121, 33 Atl. 371; City of San Antonio v. San Antonio St. Ry. Co. 22 Tex. Civ. App. 148, 54 S. W. 281; Washburn County v. Thompson, 99 Wis. 585, 75 N. W. 309; People v. Board of Supervisors, 27 Cal. 655; New Orleans v. L. & N. R. Co. 109 U. S. 221, 3 Sup. Ct. 144, 27 L. ed. 916; Hine v. Stephens, 33 Conn. 497, 89 Am. Dec. 217; City of Logansport v. Dykeman, 116 Ind. 15, 17 N. E. 587; McKennie v. Charlottesville R. Co. 110 Va. 70, 65 S. E. 503, 18 Ann. Cas. 1027; State v. Davis, 11 S. D. 111, 75 N. W. 897, 74 Am. Dec. 780; Town of Petersburg v. Mappin, 14 Ill. 193; Gering v. School Dist. 76 Neb. 219, 107 N. W. 250; St. Louis, I. M. & S. Ry. Co. v. Anthony, 73 Mo. 431; Multnomah County v. Dekum, 51 Ore. 83, 93 Pac. 821, 16 Ann. Cas. 933; Paret v. City of Bayonne, 39 N. J. Law, 559; City of Springfield v. Walker, 42 Oh. St. 543; Labette County v. Elliott, 27 Kan. 606; Wells v. Putnam, 169 Mass. 226, 47 N. E. 1005; City of Buffalo v. Bettinger, 76 N. Y. 393; 2 Dillon, Mun. Corp. § 821; 3 Abbott, Mun. Corp. § 1160; Tiedeman, Mun. Corp. § 142; Beach, Public Corp. § 838; 28 Cyc. 1756.

Where a claim has been reduced to final judgment and the debtor has sufficient assets so that it may be collected, the municipality has no power to compromise the judgment claim. To do that would

be giving away the property of the taxpayers and this is beyond the powers of the municipality—if the municipal officers wish to do charity, they must use their own money. They cannot accept less than the full amount in discharge of such judgment because all controversies have been put to rest and there is no longer anything to compromise. 5 McQuillin, Mun. Corp. § 2479; People v. Parker 231 Ill. 478, 83 N. E. 282; People v. Holten, 287 Ill. 225, 122 N. E. 540; Standart v. Burtis, 46 Hun, 82; Farnsworth v. Town of Wilbur, 49 Wash. 416, 95 Pac. 642, 19 L. R. A. (N. S.) 320; Town of Butternut v. O'Malley, 50 Wis. 329, 7 N. W. 246; Township of Otsego Lake v. Kirsten, 72 Mich. 1, 40 N. W. 26, 16 Am. St. 524.

However, after the entry of final judgment, municipal corporations have the power to compromise and accept less than the full amount of the judgment where the debtor is not able to pay the full amount and the municipality is not able to enforce full payment. Collins v. Welch, 58 Iowa, 72, 12 N. W. 121, 43 Am. Rep. 111; Hagler v. Kelly, 14 N. D. 218, 103 N. W. 629; Washburn County v. Thompson, 99 Wis. 585, 75 N. W. 309; 5 McQuillin, Mun. Corp. § 2479. All compromises and settlements made by municipalities must rest in good faith. All the ordinary rules of business conduct by which prudent persons are governed are applicable to public municipalities in the settlement, adjustment and compromise of their affairs under similar circumstances. We see no reason that should preclude a municipality from having authority to compromise its litigation either before or after judgment under the limitations stated.

4. The city of Eveleth has a home rule charter. Chapter 8 thereof specifies the powers of the city and of the council. Section 70 thereof includes 7 subdivisions and specifies the general powers of the city. Section 71 thereof reads:

"The qualified voters of the city shall have the power, through the initiative and otherwise, as provided by this charter, to enact appropriate legislation, to carry out and enforce any of the above general powers of the City, or any of the specified powers of the Council."

Then the specified powers of the council are stated in section 72 thereof embracing 77 subdivisions and subdivision 77 reads:

"To enact appropriate legislation and to do and perform any and all acts and things which may be necessary and proper to carry out the general powers of the City, or any of the provisions of this charter, and to exercise all powers not in conflict with the Constitution of the State, with this Charter, or with the ordinances adopted by the people of the City; and the above enumeration of specific powers shall not be held in any way to curtail or restrict any power which the Council might otherwise have under the common law."

Chapter 12 of the charter provides for the initiative, and subdivision 3 provides that, where the petition is signed by the requisite number of electors, the council shall either pass the ordinance within 20 days, or within 25 days proceed to call a special election at which the ordinance shall be submitted to a vote of the people.

Doubtless the comma after the word "legislation" in section 71 was inserted through inadvertence. We think it was the meaning of this section that legislation was to be enacted "to carry out and enforce any of the above general powers" or any of the "specified powers of the council." But if the comma was intentionally used it could not change the result here as we see the situation.

The power to compromise is not included in the general powers of the city nor in the specified powers of the council as embraced in chapter 8 of the charter to which the provisions of section 71 are directed. We construe the charter as giving to the voters the power to enact legislation for the purposes mentioned. We do not believe that the language of the charter indicates that it was the intention of its framers that a certain number of electors could call for an election to decide each, or any, of the many acts of administration which must be met and solved by the officials of the municipality. The compromise of such claims, as here involved, like a demand from one who claims to have been hurt by reason of a defective sidewalk, calls for investigation and discretion. Such matters are usually passed on by a resolution. Seldom, if ever, do they call

for the expense and delay of passing an ordinance which is the ordinary name for municipal legislation. Suppose a man is injured by reason of a defective sidewalk, may he, being able by his popularity, procure the necessary signatures to his petition, put on a campaign, and procure a decision of the people compelling a specified amount of money to be paid to him? We think not. Yet the suggestion is analogous to the instant proposal. It may be an elector, not necessarily a taxpayer, who signs the petition. It seems more reasonable to construe the language of the charter, as we do, to mean that the power given the electors to enact legislation has reference to ordinances of general legislation which lay down some permanent and uniform rule of law for the guidance of the municipality and the people. An ordinance is a local law. The distinction between such acts and those acts that relate to daily administration of municipal affairs is obvious. Shaub v. Lancaster City, 156 Pa. St. 362, 26 Atl. 1067, 21 L. R. A. 691. The right of initiative and referendum is ordinarily limited to acts of legislation. 19 R. C. L. 909, § 207; Long v. City of Portland, 53 Ore. 92, 98 Pac. 149, rehearing 1111; Brazell v. Zeigler, 26 Okla. 826, 110 Pac. 1052; Hopping v. Council of City of Richmond, 170 Cal. 605, 150 Pac. 977; Chase v. Kalber, 28 Cal. App. 561, 153 Pac. 397; Southwestern T. & T. Co. v. City of Dallas, 104 Tex. 114, 134 S. W. 321; Home Telephone Co. v. City of Los Angeles, 211 U. S. 265, 280, 29 Sup. Ct. 50, 53 L. ed. 176; Yarbrough v. Donaldson, 67 Okla. 318, 170 Pac. 1165; Meade v. Dane County, 155 Wis. 632, 145 N. W. 239; State v. White, 36 Nev. 334, 136 Pac. 110, 50 L. R. A. (N. S.) 196, and note 203; L. R. A. 1917B, 15, 23. Executive and administrative duties are such as concern the execution of existing laws.

Is this proposed ordinance such as to constitute legislation? It does not enact a law but rather it says that the city will exercise an existing law, namely, that law which authorizes a settlement. It therefore is administering a law already made. It is the exercising of an administrative function. We think the measure is one that calls for investigation and discretion, and, if such matters are not to be met and handled as a part of the daily routine of business of a municipality, but must be submitted to the people to make a

law for each controversy that may arise, we are drifting from the ideals of representative government. In fact, the theory of initiative and referendum was directed at supposed evils of legislation alone and as said in Hopping v. Council of City of Richmond, 170 Cal. 605, 611, 150 Pac. 977, "to allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city. In many cases it would entirely prevent the exercise of the executive power necessary to carry out the acts determined upon by the legislative department. In the absence of a very clear declaration to the contrary, it must be presumed that the power of referendum was intended to apply solely to the legislative powers of the city."

In Dooling v. City Council of Fitchburg, 242 Mass. 599, 601, 136 N. E. 616, a petition for a writ of mandamus was filed to compel the city to submit to a vote of the people the matter of awarding contracts for the equipment of a school house. The statute there required a referendum of " 'any measure' finally passed by the city council of cities which have adopted Plan B of the City charter. 'Measure' is defined * * * to be 'an ordinance, resolution, order or vote'." In construing the statute and as to the form of municipal action which was proper for referendum the court said:

"It is manifest that these words, although of broad signification, are necessarily limited to subjects vested by law in the city council. * * * The orders of the city council as to which the referendum is sought in the case at bar are clearly executive and not legislative in their nature. A direction to an officer to sign a specified contract with a named person to do a defined thing for a specified price is not a legislative act. It is in form a direction from a superior to an inferior to perform a designated duty. It is not the laying down of a rule, a principle or a law by which the conduct of a public officer may be guided. * * * No nicety of definition is required to demonstrate that this is not legislation. * * * Not being 'measures' within the jurisdiction of the city council, the referendum provisions of the act are not applicable to them. * * * As a matter of practical administration of municipal affairs this interpretation is the only one which would render the referendum a work-

able measure. If every dissatisfied bidder or disappointed applicant for municipal work could invoke the machinery of the referendum of the statute, thereby suspending the taking effect of the measure thus assailed, efficiency and economy in the business administration of a city would be seriously affected. This consideration has led courts of some other jurisdictions to go far in restricting municipal referendum to legislative acts."

The matter involved in the proposed ordinance is one that calls for investigation and the exercise of discretion and business judgment. It is inherently of such character that the voters, no matter how intelligent, cannot be expected to investigate and have access to all the information which we may assume the city council, with the aid of their attorney, acquire. Full information should be obtained and carefully considered before a conclusion is reached. Such powers properly belong to the executive and administrative officials. Champion v. Minnehaha County, 5 Dak. 416, 41 N. W. 739. Power to do these things is by law properly vested in the council. When such power is conferred upon officials, who are not a part of the judiciary, it is termed "quasi judicial" and as said in 34 C. J. 1180, par. 5c (and supported by cases there cited):

"A distinction is made between such acts and those ministerial duties which can be properly performed only in one particular way. A quasi judicial power is one imposed upon an officer or a board involving the exercise of discretion, judicial in its nature, in connection with, and as incidental to, the administration of matters assigned or intrusted to such officer or board. A quasi judicial duty is one lying in the judgment or discretion of an officer other than a 'judicial officer,' and the function is termed 'quasi judicial' when such an officer is charged with looking into and acting upon facts not in a way which the law specifically directs, but after a discretion, in its nature judicial; quasi judicial functions are those which lie midway between the judicial and ministerial ones."

The term "quasi judicial" indicates acts of the city officials, which are presumably the product or result of investigation, consideration and deliberate human judgment based upon evidentiary facts of

some sort commanding the exercise of their discretionary power. It is the performance of an administrative act which depends upon and requires the existence or non-existence of certain facts which must be ascertained and the investigation and determination of such facts cause the administrative act to be termed quasi judicial. Mitchell v. Clay County, 69 Neb. 779, 96 N. W. 673, 98 N. W. 413; Mo. K. & T. Ry. Co. v. Shannon, 100 Tex. 379, 100 S. W. 138; Hoyt v. Hughes County, 32 S. D. 117, 142 N. W. 471; Austin v. Eddy, 41 S. D. 640, 172 N. W. 517; Champion v. Bd. of Co. Commissioners, 5 Dak. 416, 41 N. W. 739. We are brought to the conclusion that since the proposed ordinance is not legislative in character but involves a quasi judicial duty, it does not come within the provisions of section 71 of the city charter. The electors were not entitled to have it submitted to a vote of the people and the demurrer interposed by the appellants must be sustained.

Reversed.