## GRIMES v. HAMILTON COUNTY.

1. **Swamp lands:** CONTRACTS OF COUNTY IN RELATION TO: STATUTE OF FRAUDS. A resolution of the board of supervisors of a county offering to convey a portion of its swamp lands in compromise of a suit pending against the county, to recover for services rendered in securing to it the title to swamp lands from the government, and the acceptance of such resolution by the person in whose behalf it was offered, constitutes a contract which will be specifically enforced against the county.

2. —— A contract of this character need not be in writing and signed by the respective parties. Section 987 of the Revision is not applicable.

3. —— The resolution of the board and its acceptance furnish *written evidence* of the contract, and competent for its proof under our statute of frauds.

4. —— USES TO WHICH SWAMP LANDS MAY BE DEVOTED. Swamp lands belonging to a county may be, by it, devoted to other uses than those prescribed by section 988 of the Revision.

5. —— SUBMISSION TO VOTE. A contract for the conveyance of a portion of swamp lands in payment or compromise for services rendered in securing title from the government, need not be submitted for ratification to a vote of the people. Section 988 of the Revision is not applicable.

6. **County**: POWER OF SUPERVISORS. The board of supervisors of a county have power to compromise a suit pending against the county.

7. **Practice**: ON APPEAL. A judgment will not be reversed for errors which might have been corrected on motion in the court below, unless such motion was there made and overruled.

*Appeal from Black Hawk District Court.*

TUESDAY, OCTOBER 21.

THE petition and the exhibits thereto set forth the following facts: That in the month of June, 1869, William Baker made a contract with defendant in which he agreed to perform certain labor for defendant, for the purpose of securing the indemnity due defendant from the government of the United States for lands sold by the government, which belonged to defendant under the law relating to swamp lands, and said Baker undertook to prepare the claim of defendant, furnish all the necessary blanks, make the necessary proofs, and pay all expenses attending the same, and do all work necessary to get said claim before the proper department, in consideration of which defendant agreed to pay Baker twenty per cent of the cash recovered for all lands entered with cash, and twenty per cent of the lands after they had been located by the agent of the defendant, and to give Baker the agency for selecting the lands under the act of 1862.

That Baker completed all the work agreed to be performed, and paid all the expenses agreed to be paid, and secured to defendant cash indemnity for swamp lands sold by the United States for cash, $4,607.94, and land scrip for lands sold by the United States for warrants or located scrip, 7,480 acres, which properly located, at the time it was received by the county, was worth two dollars and fifty cents per acre.

That in the month of September, 1867, Baker made a further contract with defendant whereby he undertook to make the necessary proofs and do the necessary work to secure to said county title to certain other swamp lands not included in the foregoing contract, for which defendant agreed to pay ten per cent in value of said lands secured to the county

That in pursuance of this contract Baker made the necessary proofs and secured to be allowed to defendant the amount of 9,000 acres, worth two dollars and twenty-five cents per acre.

That Baker presented his claim to the board of supervisors of defendant for all of said services, and demanded payment, which was refused; and that, at the May term, 1870, of the Hamilton district court, said Baker filed his petition in said court, claiming of defendant, on behalf of said services, the sum of $6,829.78, with interest from the 1st day of January, 1870.

That on or about the 6th day of September, 1870, and whilst said action was pending, defendant, by its board of supervisors in actual session, for the purpose of settling the controversy, submitted to Baker a resolution adopted by said board, as follows:

" Be it resolved by the board of supervisors of Hamilton county, Iowa, that, for the purpose of obtaining a settlement of the claim of William Baker, against said county, and end the litigation now pending, that there be and now is hereby offered and tendered to said Baker, in payment of all his claims against said county, the following described lands, belonging to the said county, and located in the counties of Kossuth and Emmett, to wit :    *    *    *    *

"And, in case of the same being accepted by the said Baker, or his attorney, as a settlement of said claim, and all demands against the county, then the chairman and clerk of this board are hereby authorized and empowered and directed to make to said Baker, or his assigns, in the name of said county, a good and sufficient deed or deeds of all the above-described lands, and execute and deliver the same to the said Baker, his agent or attorney, upon the dismissal of his action now pending against the county, and the settlement of his claim as aforesaid, each party to relinquish all claims for costs and damages against the others."

That the said Baker, by his attorney, accepted the proposition of said county, as follows :

" To the Board of Supervisors of Hamilton county:

" The proposition of said board to settle the claim of Wm. Baker is accepted by me, and the action will be forthwith dismissed."

The petition further alleges that Baker dismissed his cause of action against said county, and in all things performed the acts to be done by him as conditions of the said settlement; that afterward he assigned all his interest in said lands to Alexander Cheny, and that Alexander Cheny assigned his interest therein to plaintiff; that Baker and this plaintiff demanded a deed for said lands, and the board of supervisors of said county refused to execute the same.

Petition prays a specific performance of the contract of settlement made with said Baker, and in case of the inability of defendant to perform the same, that plaintiff may be awarded damages.

To this petition the defendant demurred as follows :

" First. The resolution of the board of supervisors, of September 6th, 1870, and the acceptance of Baker, do not constitute such a contract as can be specifically performed.

" Second. The proposition to pay the said Baker in land, as a compromise, was not authorized, and the value of the land cannot therefore be the measure of plaintiff's damages.

" Third. Plaintiff does not ask for payment for Baker's services rendered, but claims a performance of contract which he knows the defendant's agents, whom he negotiated with, had no authority to make.

" Fourth. Plaintiff's remedy is at law for damages for the services of said Baker and not a specific performance."

After the filing of said demurrer the cause was, by consent of parties, transferred to the district court of Black Hawk county. On the 28th of May, 1872, the cause was submitted to the court to be decided in vacation, and decision rendered as of the then pending term, exception thereto to be entered for either party by the clerk.

On the 1st day of October, A. D. 1872, the defendant's demurrer was overruled. Defendant excepted, and, as recited

in the abstract, elected to stand on the demurrer. The court rendered judgment for plaintiff, directing defendant by the chairman of its board of supervisors and its auditor, to make and deliver to plaintiff a deed conveying said lands to Wm. Baker for the use and benefit of his grantees.

Defendant appeals.

*W. J. Covil* for the appellant.

*N. B. Hyatt* with whom is *J. M. Elwood* for the appellee.

DAY, J. — I. The first point of the demurrer is that the resolution of the board of supervisors of September 6, 1870, and the acceptance of Baker, do not constitute such a contract as can be specifically performed. Under this assignment it is urged that the resolution of settlement, and acceptance of same by Baker, is, in a legal sense, no more than a verbal contract. If this should be admitted, it by no means follows that for that reason a specific performance of it cannot be enforced. There is no general rule of equity which inhibits the specific performance of parol contracts for the conveyance of real estate.

1. SWAMP LANDS.

The jurisdiction of equity to grant such relief is, perhaps, most frequently invoked in cases of parol contracts, where from part performances, payment of purchase-money, or other ground of equitable interposition, it would be unconscionable to permit a party to repudiate his agreement.

Even the statute of frauds of 29 Charles II did not require that the *contract* should be in writing. It was a compliance with that statute if the agreement *or some memorandum or note thereof* was in writing, signed by the party to be charged, or some other person thereunto lawfully authorized. And our statute upon evidence, which supplies the place of the English statute of frauds, simply provides that the evidence of the enumerated contracts shall be in writing. Revision, §§ 4006 and 4007.

And under both the statute of frauds of Charles II and the

provisions of the Revision, the memorandum or evidence of the contract may be contained in or derived from several distinct papers. It cannot be denied that the resolution and its acceptance furnish *written evidence* of the contract, competent for its proof under our statute. And if such were not the case the allegation that Baker fully performed the contract upon his part would take the same out of the operation of the statute. Revision, § 4008; Story's Eq. Jur., § 1522, and cases cited.

We do not, however, understand defendant to claim that there is any thing in the general provisions of our statute on evidence which prevents the enforcement of this contract.

His position seems to be, that for some cause not clearly set forth in the agreement under this assignment, no specific performance of such a contract as this can be enforced unless it is in writing, signed by the parties to be charged thereby.

We have seen there is no general principle of equity which requires such construction.

Whether there is such special regulation applicable to this contract, we will consider under the other propositions discussed in appellant's argument.

II. The second and third assignments of demurrer are considered by appellant together.

4. —— uses to which swamp lands may be devoted. Under these it is urged that the contract is in excess of the power of the board of supervisors and is without any binding force or obligation.

It is claimed:

*First.* That section 986 of the Revision, as amended by chapter 77, Laws 1862, declares the only uses to which the swamp lands of counties shall be devoted, and that any contract of the board of supervisors devoting them to any other use is void. We had occasion to examine this question in *Allen* v. *Cerro Gordo County*, December term, 1871, and in that case we held, in view of the various provisions of the statute (Revision, §§ 921, 945, 984), requiring the expense of selecting, etc., to be paid out of the proceeds of the sales of swamp lands, that the county under its implied power

could make a valid contract with an agent who undertook the recovery of its swamp lands, to give him, as compensation for the services rendered, a portion of the swamp lands recovered.

If the board of supervisors had authority, in the first instance, to compensate an agent for labor performed respecting the swamp land, by conveying to him a portion of the lands, it is difficult to discover any legal principle which will deny them the right to compromise a suit brought to recover compensation for such services, by a like conveyance of a portion of such lands, unless, indeed, the authority of the board of supervisors to compromise such action is denied altogether, which position we do not understand appellant to maintain.

*Second.* It is further urged under these assignments of demurrer that a contract for the conveyance or devotion of the swamp or indemnity lands of a county for any of the purposes authorized by law, must be reduced to writing and signed by the respective parties or their duly authorized agents. Section 987 of the Revision. This objection sheds light upon the view maintained by appellant in the first assignment of the demurrer, and the argument thereunder. The position is that such a contract as the one herein sought to be enforced can be valid only when formally executed in writing. We do not stop to discuss the question whether the contract under consideration is so executed, for the section of the Revision referred to is not, in our opinion, applicable to it.

Section 986 of the Revision, as amended by chapter 77, Laws 1862, provides various uses to which it shall be competent and lawful for the counties owning swamp lands to devote them. These uses are the erection of public buildings for purposes of education, the building of bridges, roads and highways, for building institutions of learning, for a permanent school fund for the use of the county, for building county buildings, and for making railroads through the counties to which the lands belong.

The next section (987) is as follows: " The proper officer or officers of any county may contract with any person or company for the transfer and conveyance of said swamp or over-

flowed lands, or the proceeds thereof, or otherwise appropriate the same to such person or company, or to their use, for the purpose of aiding or carrying out any of the objects mentioned in the first section of this act, which said contract shall be reduced to writing, and signed by the respective parties or their lawful authorized attorneys." It is clear that this section applies only to such contracts as are made for the purpose of devoting the swamp lands to some of the uses provided for in the preceding section.

The proper officer may contract for the purpose of carrying out any of the objects mentioned in the first section of this act (which is section 986 of the Revision), which *said contract* shall be reduced to writing, etc. It is apparent that, if there is any lawful use of the swamp lands, other than those mentioned in section 986, and the amendment thereto, a contract devoting the lands to such use is not governed by section 987. It is, therefore, no valid objection to this contract that it is not executed in the manner which that section prescribes.

*Third.* It is further urged, that before the contract authorized by section 987, Revision, can be of any force or validity, it must be submitted to a vote of the people as directed by section 988, Revision. This is true. But this contract is not provided for in section 987, and it is only to those thus executed that section 988 applies. The language of that section is before such contract shall be of any force or validity, the same shall be published, etc.

5. —— submission to vote.

III. Lastly, it is claimed that plaintiff's remedy is at law, for the value of the services of Baker, and not a specific performance. We do not see upon what grounds plaintiffs could sue for the value of the services of Baker. Baker commenced an action to recover the value of those services. Whilst it was pending defendant proposed to settle the controversy by conveying to him the lands in dispute. Baker accepted the offer and dismissed his action. It may be that by the refusal of the defendant to convey, Baker was discharged from the obligation of the contract.

6. COUNTY.

But surely, defendant, by its refusal, could not deprive Baker of the benefits of his agreement after he had performed the same in full on his part. Defendant cannot thus take advantage of its own wrong. The plaintiff stands in Baker's place, and is entitled to his remedies.

The property in question is the property of the county, and under the control of the board of supervisors. *Allen* v. *Cerro Gordo County, supra.*

It is the duty of the board of supervisors to represent their respective counties, and to have the care and management of the business of the county. Rev., § 311, subd. 11. The board of supervisors prosecute and defend suits on behalf of the counties they represent. " The power to prosecute suits on behalf of a corporation includes the power to settle the same. So, the power to defend suits brought against a corporation gives them the same power of adjustment. They may compromise doubtful controversies, to which the corporation is a party either as plaintiff or defendant."

" The law vests them with a discretion in such matters, which they are to exercise for the best interests of the corporation The settlement of an existing controversy, if made in good faith, binds the corporation; but if collusively made, it is not obligatory." *The Town of Petersburgh* v. *Mappin et al.*, 14 Ill. 195.

Nothing appears upon the face of the petition to show that this compromise was not made in good faith. Then why should it not be enforced? Usually the obligee of a contract for the conveyance of real estate has a choice of remedies. He may sue for damages at law, or he may enforce a specific performance in equity.

But it is urged that the specific execution of an agreement rests in the sound discretion of the court. This is true. But it is not a matter of arbitrary or capricious discretion, dependent upon the mere pleasure of the judge. It rests in a sound and reasonable discretion, which governs itself, as far as may be, by general rules and principles. 1 Story's Eq. Juris., § 742. Nothing appears upon the face of the petition to show

that the agreement for compromise is not fair and just in all its parts.

It cannot be presumed that the agents of the county would refuse altogether to pay Baker his claim for services, and, as soon as they were sued therefor, would agree to pay him, by way of compromise, more than he was entitled to. It is clear that the petition does not upon its face show such to be the fact, and it is with the petition alone that we are now concerned. We have thus examined all the grounds of the demurrer, and we are of opinion that it was properly overruled in all its parts.

Appellant asks that if the court should hold that the demurrer is not well taken, the cause may be remanded, with leave to defend.

In their arguments, the counsel for the respective parties differ materially as to the attitude of the case when the demurrer was overruled in the court below. In view of this conflict, we must govern ourselves by the abstract alone.

7. PRACTICE.

From this it appears that the cause was submitted to the court, to be decided in vacation, an exception to the decision to be noted for either party by the clerk. Plaintiff did not stipulate for leave to amend, nor defendant for leave to plead.

The abstract further recites that upon the overruling of the demurrer the defendant excepted, and elected to stand on his demurrer. The demurrer was overruled, it seems not in vacation, but during term time, on the 1st day of October, 1872. Judgment was entered upon it the next day.

Section 3086 of the Revision provides that, "upon a decision of a demurrer, if the unsuccessful party fail to amend or plead over, the same consequences shall ensue as though a verdict had passed against the plaintiff, or the defendant had made default, as the case may be." If the defendant had any legal excuse for a failure to plead or to ask leave to do so, he should have called the attention of the court below to it, by a motion to set aside the judgment, and for leave to plead.

If it had made such motion, supported by such showing as

it deemed proper to make, and the same had been overruled, the appeal would bring before us all the facts. Now, we know nothing of the merits of defendant's request.

The court below, so far as the facts appear to us, had the right to enter a final decree.

"A judgment or order shall not be reversed for an error which can be corrected, on motion, in an inferior court, until such motion is made there and overruled. Rev., § 3545."

From the whole record, the defendant must be regarded as having elected not to plead, or as having waived the right to plead.

It is not, therefore, entitled to have the cause remanded for trial upon the merits. *Dunlap* v. *Cody*, 31 Iowa, 260.

Affirmed.