### COLLINS v. WELCH ET AL.

1. **Board of Supervisors**: COMPROMISE OF JUDGMENT. The board of supervisors, if acting in good faith in respect thereto, has the authority to compromise a judgment in favor of the county. BECK, J., *dissenting*.

*Appeal from Lee Circuit Court.*

WEDNESDAY, APRIL 19.

THIS action is brought against the board of supervisors and the treasurer of Lee county. The plaintiff is a resident and tax payer of Lee county, and as such complains of the defendant supervisors in that they compromised a certain judgment obtained against the Commercial Bank of Keokuk for taxes, which bank he alleges was solvent, and able to pay the judgment. He alleges that they had no power to make such compromise, and he prays for a writ of *certiorari* for the purpose of testing their power in this respect, and for the purpose of setting aside the pretended compromise, if it shall be found that the power does not exist.

The defendants demurred to the petition, upon the ground, among others, that the board of supervisors had power to compromise the judgment. The court sustained the demurrer, and the plaintiff electing to stand by his petition, the court dismissed the same, and the plaintiff appeals.

*W. B. Collins*, for himself, appellant.

*Craig, Collins & Craig*, for appellees.

ADAMS, C. J.—There is no pretense that the claim for taxes was not properly put in judgment, and no question is raised in regard to the validity of the judgment. It has now become a claim to be enforced by execution, and in our opinion stands upon the footing of any other judgment. The question, then, arises as to

*1. BOARD of supervisors: compromise of judgment.*

whether the board of supervisors has power to compromise a judgment. In our opinion it has. It is provided in section 303 of the Code, subd. 11, that county supervisors are "to represent their respective counties, and to have the care and management of the property, and business of the county, in all cases where no other provision shall be made." It was held in *Grimes v. Hamilton County*, 37 Iowa, 298, that this provision gave the board power to compromise an action if it acted in good faith; and it appears to us that it follows that the board may compromise a judgment if it acts in good faith. It is true that, where a claim has been reduced to judgment, all questions pertaining to the rightfulness of the claim have been adjudicated. But questions may arise subsequent to the rendition of the judgment, and where they are of such a character as to render a compromise expedient, it is manifest that the board ought to have the power to make it. Suppose, for instance, that the financial condition of the judgment debtor is such that the board is unable to discover any way of collecting any part of the judgment. The board should have the power to accept a part in satisfaction of the whole, if in its judgment the best interests of the county would thereby be promoted. All rules of business conduct by which a prudent person is governed are applicable to a county in the management of its affairs under similar circumstances.

It is true that in the case at bar the plaintiff avers that the judgment debtor was solvent. But that averment is not material. We cannot go into any such question of fact in this action. The question before us is one of jurisdiction. If the board can make a compromise with an insolvent judgment debtor, it must be allowed to judge for itself in any given case as to whether the debtor is insolvent or not, and an error made in this respect, however great, would not affect its jurisdiction. In our opinion the demurrer was properly sustained.

AFFIRMED.

BECK, J., *dissenting.*—I.　I cannot concur in the opinion of the majority of the court in this case.　In my judgment the defendants have no power to discharge, release, or "compromise" a part of the judgment recovered by the county against the Commercial Bank.　The foregoing opinion concedes that they do not possess such power, unless it be conferred by statute, but it is argued that the power is conferred by Code, section 303, par. 11.　This provision clothes the supervisors with authority to manage and exercise care over the business and property of the county.　It cannot be fairly claimed that power to *take care of* and manage the county's property may be exercised by destroying, giving away, or abandoning such property.　It is to be *managed* and *taken care of* by the supervisors.　This unmistakably implies that the property is to be kept and retained for the use of the county—not given away or squandered.　The provision, in my opinion, not only fails to support my brothers' position, but unequivocally forbids the act which they hold to be lawful.

II.　But my brothers insist that the defendant's satisfied the judgment in the exercise of their power to compromise an action to which the county is a party.　This they have power to do under *Grimes v. Hamilton County*, 37 Iowa, 290.　But an insuperable objection to this position, is that defendant did not compromise an action, for the very best of reasons—no action, in fact, was pending.　There had been an action, but a judgment had been rendered therein.　If there was a "compromise," it was not of an action, but of a valid undisputed claim upon a judgment.　In the case just cited, there was an action against the county which it resisted, and litigation was pending.　There could well be a compromise in that case; in this case there was no pending litigation, and no dispute as to the validity of the county's claim on the judgment.　In my judgment the canceling of the judgment upon the payment of a part only, cannot be called a "compromise."　The word is applied in law to "an agreement between two or more persons, who, to avoid a law suit, ami-

cably settle their differences, on such terms as they can agree upon." Bouv. Dict. It is sometimes said that a debtor in failing circumstances compromises with his creditors upon the payment of a part of their claims, and is discharged as to the balance. But the word is never applied to the act of a creditor who abates a part of his demand against a solvent debtor who has no defense to urge against the claim. In all cases where a " compromise " is made, there must be resistance to the payment of a debt, or an inability to pay. The creditor must concede something to the defense or poverty of the debtor. If the creditor through favor or for friendship forgives the debt, it is not a compromise. It would be just as improper to apply the word to such a transaction as to say that, in the distribution of alms, a compromise is made with the mendicant.

III. The petition in the case before us alleges that the county's claim for taxes was litigated by the Commercial Bank; that a trial was had and a judgment was rendered against the bank, and that it was "solvent, and fully and amply able to pay the whole tax," and that the whole amount of the judgment could have been collected. It appears that the bank had exhausted its efforts to defeat the taxes, and when, finally, it could make no further resistance, offered to pay a part in discharge of the whole judgment; and this is called a compromise.

IV. My brothers strengthen their opinion by suppositions which are precluded by the facts of the case. They use the following language: "But questions may arise subsequent to the rendition of the judgment, and when they are of such a character as to render a compromise expedient, it is manifest that the board ought to have the power to make it. Suppose, for instance, that the financial condition of the judgment debtor is such that the board is unable to discover any way of collecting any part of the judgment. The board should have the power to accept part in satisfaction of the whole. * * * * " But the facts here supposed are not

only not shown to exist, but they are negatived by the averments of the petition which the demurrer admits.

V.　But the opinion of the majority holds, that as the board has the power to compromise with an insolvent creditor, it has the jurisdiction to determine the question of solvency, and its decision thereon cannot be questioned by the courts.　The position is this, that the supervisors' decision upon the question of their jurisdiction in this matter, is conclusive, and cannot be questioned in an action brought for the very purpose of procuring a judgment of this court, the final arbiter of all such questions, as to the extent of the power of the supervisors; in few and plain words, the courts cannot question the jurisdiction of the supervisors, for the reason that they have decided that they have jurisdiction.

I have heard much that has been said, and read much that has been written, upon the subject of the jurisdiction of courts, but this doctrine is new to me.　I have always understood the rule to be that the jurisdiction of courts (and I have never understood that the board of supervisors is higher than the courts) may always be inquired into whenever their judgments are brought in question.　It is true that their decisions upon questions of process, whereby they obtain jurisdiction, cannot be collaterally assailed.　But if upon the face of the record of a judgment it appears that jurisdiction is wanting, the judgment is void, and will be so regarded in both collateral and direct attacks.

The case before us is *certiorari*, a proceeding devised to inquire into and determine the jurisdiction of tribunals, boards and officers.　Code, § 3216.　By this proceeding the judgment of a court, or the act of a board or officer, is directly, not collaterally, attacked.　The petition of plaintiff alleges facts, admitted by the demurrer, which deprives the defendant of jurisdiction to cancel the judgment.　So in this direct proceeding to determine the jurisdiction of the supervisors, the want of jurisdiction is shown by the record. Yet my brothers say we cannot inquire into the question of

their jurisdiction. I desire to express with emphasis my dissent to the doctrines and conclusion of the foregoing opinion.