Doyle P. SCHMITTER and Cletus Eugene Pacha, Appellees,

v.

Lovina KAUFFMAN, Administrator of the Estate of Arthur Kauffman, Deceased, Appellant.

No. 60707.

Supreme Court of Iowa.

Jan. 24, 1979.

724

John T. Nolan of Nolan, Lucas & Nolan, Iowa City, for appellant.

Vern M. Ball, Bloomfield, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, McGIVERIN and LARSON, JJ.

REYNOLDSON, Chief Justice.

In a law action tried to the court plaintiffs claimed damages against defendant's intestate for alleged negligent destruction of a bridge which furnished access to their land. Trial court entered judgment awarding plaintiffs $7500 as assignees of Washington County's claim against defendant for destroying the bridge. Defendant appeals. After cross-appealing from the judgment because it failed to award them special damages, plaintiffs dismissed their appeal. We affirm on defendant's appeal.

In October, 1972, defendant's intestate, Arthur Kauffman, had loaded his five-ton, 1962 International flatbed truck with about eight tons of logs. After some discussion with others concerning the risk, he then attempted to drive this rig over the Rubio bridge spanning Richland Creek in Washington County. The bridge was posted for a four-ton limit. This proved closer to the truth than Kauffman's estimate. Kauffman, who was uninjured, extracted his property from the creekbed but the county never repaired the bridge.

The demolished structure had provided plaintiffs their sole access to farmland they owned north of Richland Creek. An access road north of the creek had been closed previously.

■ Trial court's findings of fact in a law action are binding on this court if supported by substantial evidence. Rule 14(f)(1), Rules of Appellate Procedure; *Koehler v. State,* 263 N.W.2d 760, 761 (Iowa 1978). In this case there is substantial evidence to support the following findings of trial court which are relevant in this appeal:

The court finds defendant's intestate, Arthur Kauffman, was negligent at common law in attempting to drive his loaded truck, weighing about 13 tons, across the Rubio bridge when he knew, or in the exercise of ordinary care, should have known that such bridge was unsafe for loads of more than 4 tons, and that such negligence on his part was the proximate cause of the collapse, destruction and resulting damage to said bridge.

Considering the testimony in the record as to the condition of the Rubio bridge prior to its destruction in October, 1972, its age and original cost of construction, repairs and replacements of bridge flooring and stringers, the natural deterioration of the steel components of the bridge during the years since its construction, the fact that the bridge was damaged beyond repair, the opinion evidence of expert witnesses as to cost of replacement by a new bridge of the same type, the fact that such type of bridge construction is obsolete, opinion evidence as to the value of the bridge prior to its destruction, the lack of a "market" value for such bridge, the limited use and utility of the bridge to the public generally, the court finds the actual value of the Rubio bridge immediately prior to its destruction in October 1972 was $7,500.00, that the cost of replacement thereof far exceeded its value prior to destruction, and that the damages proximately caused to said bridge by the negligence of Kauffman are $7,500.00.

After collapse of the bridge, Plaintiffs demanded of the County that they be provided with access to their lands north of Richland Creek, and entered into negotiations with the County Board of Supervisors concerning replacement of the bridge. Due to its limited use by the public generally and the cost of construction of a new bridge across Richland Creek, the County was unwilling to replace the bridge. Plaintiffs obtained legal advice that they could not compel the County to rebuild the bridge. The County investigated the cost of acquiring right of way through Kessler's land [north of the creek] to provide Plaintiffs access, but the estimated cost thereof was more than the County was willing to spend. The Board of Supervisors then began to consider closing and vacating of the three-quarters mile of Road No. 31 between Plaintiffs' farms.

After considerable negotiations between them, the County and Plaintiffs reached an oral compromise agreement concerning Plaintiffs' demands for access whereby Plaintiffs would petition for the closing of the road provided the County would construct a crossing or ford at the point where the Rubio bridge had collapsed by installing a 6' diameter steel culvert with concrete headwall on each end 12" thick and 3' over the culvert, to be backfilled with large rock to the top of the headwalls, and to grade the old road south of the culvert to drain properly; that after construction of such a crossing, the road would be vacated and closed, and the Plaintiffs would thereafter maintain said crossing; that as a part of the agreement, the County would assign to Plaintiffs its cause of action for damages to the Rubio bridge against the party responsible for its destruction and Plaintiffs would not institute suit against the County for damages now or hereafter claimed by Plaintiffs as the result of the County's acts in not replacing the Rubio bridge and in building the crossing in place thereof.

These oral agreements between Plaintiffs and the County were reduced to writing and appear in instruments identified in the record as Exh. P–6, Exh. D–2 and Exh. D–3, the first exhibit being the agreement, assignment of claim, and covenant not to sue signed by the Board of Supervisors on July 10, 1974, and the last two exhibits being the petition for road vacation signed by Schmitter on April 13, 1974, and Pacha on April 15, 1974, and the further proceedings by the Board of Supervisors for vacation of said road.

The crossing called for under the agreements of the parties was constructed and completed in October, 1974, when the closing and vacation of the road became fully and finally effective.

Pursuant to the assignment by the County to them, Plaintiffs commenced this action against Arthur Kauffman in August, 1974, and during pendency thereof Arthur Kauffman died and Lovina Kauffman, Administrator of his estate, was substituted as party-defendant herein.

Defendant raised several affirmative defenses which were rejected by trial court and are reflected in the issues raised here. Defendant asserts: (1) The board of supervisors had no authority to assign the county's claim to plaintiffs, (2) plaintiffs had no standing or right to maintain their action, (3) plaintiffs' "prior" settlement with the board barred any recovery against defendant's intestate, and (4) plaintiffs failed to prove any recoverable damages.

## I. *Authority of board to assign claim.*

Defendant argues there is no Iowa statute granting a board of supervisors authority to assign the county's right to recover for damages to property, nor can any Iowa statute, reasonably construed, be interpreted to grant such authority by implication.

Defendant additionally relies on § 321.-475, The Code 1971, which makes the driver and owner of vehicles, objects or contrivances, liable for damages to highways and highway structures resulting from "any illegal operation, driving, or moving" of such devices, and further provides "[s]uch damage may be recovered in a civil action brought by the authorities in control of such highway or highway structure." The latter provision, it is asserted, limits the right to recover such damages to the board alone.

■ Assuming for the purposes of this analysis the board would have no right to assign a § 321.475 cause of action, we do not find the statute controlling. In *State v. F. W. Fitch Co.,* 236 Iowa 208, 212–13, 17 N.W.2d 380, 382–83 (1945), this court recognized a pre-existing common-law remedy for negligent damage to bridges which was not superseded by the statute. See 40 Am. Jur.2d Highways, Streets & Bridges § 605 at 83 (1968); Annot., 53 A.L.R.3d 1035, 1039, 1042–43 (1973). The board's right, if any, to assign its common-law negligence claim is unaffected by § 321.475, The Code.

Defendant also offers *Hilgers v. Woodbury County,* 200 Iowa 1318, 206 N.W. 660 (1925), as authority there is no statutory power for the board's assignment. *Hilgers* involved a person injured in an elevator while going to the seventh floor of the Woodbury County courthouse which had been rented to the American Legion. Plaintiff was attempting to avoid sovereign immunity by characterizing the space rental as a private enterprise. The gist of the decision was that the county had no statutory power to rent for a strictly private purpose. In so ruling the court stated the general rule:

> Counties are recognized as quasi corporations, and it is universally held that the board of supervisors of a county has only such powers as are expressly conferred by statute, *or necessarily implied from the power so conferred.*

200 Iowa at 1320, 206 N.W. at 661 (emphasis added). *Hilgers* would not affect this case unless trial court found the assignment in issue was for a strictly private purpose and not for a purpose benefiting the county.

Significantly, *Hilgers* does recognize a board may exercise powers necessarily implied from powers expressly conferred by statute. See *McMurry v. Board of Supervisors,* 261 N.W.2d 688, 690 (Iowa 1978); *Mandicino v. Kelly,* 158 N.W.2d 754, 760 (Iowa 1968); *Board of Supervisors v. Standard Appliance Co.,* 249 Iowa 438, 441, 87 N.W.2d 459, 461 (1958) ("In addition to the express powers granted by statute to board of supervisors, many implied powers are authorized in order to properly perform its multiplicity of duties.").

Trial court's decision discloses it properly examined relevant express statutory powers conferred by the following provisions of the Code 1971: §§ 306.1 (roads and streets), 306.14 (damage claims for road vacations), 332.1 ("Each county * * * may acquire and hold property, make all contracts necessary for the control, management, and improvement or disposition thereof * *."), 332.3(4), (5) & (6) (board may make such orders concerning corporate property as it may deem expedient and not inconsistent with law, may settle all claims against the county, and shall have the care and management of the county property and business).

■ We hold trial court was right in concluding these statutes necessarily imply

the right of the Board * * * in compromise settlement of the claims and demands of the plaintiffs arising out of the loss of access occasioned by destruction of the Rubio bridge, the refusal of the County to rebuild said bridge, and decision of the County to institute proceedings to vacate the portion of the secondary county road on which said bridge had been constructed and maintained, to assign its cause of action against the defendant for damages to the bridge proximately caused by the negligence of defendant's intestate.

See *Sorenson v. Andrews,* 221 Iowa 44, 50–51, 264 N.W. 562, 565 (1936); *Plymouth County v. Koehler,* 221 Iowa 1022, 1026, 267 N.W. 106, 110 (1936).

Defendant vigorously asserts there was no relationship between plaintiffs' relinquishment of damage claims for road vacation and the board's subsequent assignment of its cause of action against defendant. The assignment, according to defendant, was an afterthought to mollify plaintiffs when it became apparent the culvert crossing would not hold during high water. Thus the assignment, defendant argues, was contrary to public policy because it gave away to private individuals the county's right to recoup for its taxpayers the expense of installing the crossing on Richland Creek. While there was evidence the two transactions were not associated, there was also substantial evidence upon which trial court posited its finding that the assignment was part and parcel of the initial, negotiated settlement of plaintiffs' damages. The judgment in this respect has the force of a special verdict, see rule 14(f)(1), R.App.P., and we will not interfere.

## II. *Plaintiffs' standing or right to maintain cause of action.*

Defendant first asserts plaintiffs cannot maintain this action because the assignment exceeded the powers of the board. We have reached the opposite conclusion in division I.

■ Defendant next argues the county could not have claimed damages for the bridge because it was part of the road which was vacated, and therefore plaintiffs had no cause of action. No relevant authority is cited to support this rationale. The county's cause of action arose when the bridge was demolished. The evidence disclosed the bridge was nonexistent when the vacation of the road occurred. The county had a claim against defendant's intestate for destruction of its property which was unaffected by its subsequent vacation of the road.

Similarly irrelevant in view of plaintiffs' dismissal of their cross-appeal, is defendant's argument that plaintiffs had no independent right of recovery. Trial court did not find for plaintiffs on the two divisions of their petition in which they alleged their own causes of action. The only relief granted plaintiffs was on the division in which they claimed under the assignment.

Finally, defendant claims plaintiff Pacha cannot recover because of his contributory negligence. Trial court found this defense to be meritless. We agree.

## III. *Plaintiffs' settlement with the county as a bar.*

■ Defendant contends that when the plaintiffs agreed to accept the culvert crossing as full replacement for the bridge and their road vacation damages they could not thereafter seek damages from defendant for loss of the bridge. Cited as authority are early Iowa cases holding the release of one joint tort-feasor discharges all.

This reasoning overlooks several basic facts. Plaintiffs recovered in district court as assignees of the county, not in their own right. The package agreement included assignment of the claim against defendant's decedent, and the court so found. The court also found defendant's theory was inapplicable because plaintiffs never claimed the county was responsible for the collapse of its bridge, and it was therefore not a joint tort-feasor.

Further, defendant's legal theory, even if it were applicable, does not comport with the modern principles relating to releases.

See *Wright v. Haskins,* 260 N.W.2d 536, 539–41 (Iowa 1977); *Moose v. Rich,* 253 N.W.2d 565, 568–69 (Iowa 1977); *Community School Dist. v. Gordon N. Peterson, Inc.,* 176 N.W.2d 169 (Iowa 1970).

IV. *Plaintiffs' proof of damages.*

Much of defendant's brief on this issue is directed toward plaintiffs' claims for their own individual special damages. These arguments are mooted by plaintiffs' dismissal of their cross-appeal.

Defendant makes brief reference to plaintiffs' alleged failure to prove the value of the bridge.

In this situation—total destruction of the bridge—the measure of damages "would be the fair and reasonable market value, and if no market value could be established, the actual or real value." *State v. Urbanek,* 177 N.W.2d 14, 16 (Iowa 1970); see 40 Am.Jur.2d at 85; Annot., 53 A.L.R.3d at 1073.

There was expert testimony in the record to support trial court's finding that the actual value of the Rubio bridge immediately prior to its destruction was $7500.

We have considered all of the other contentions raised in defendant's brief and find they are not controlling.

We affirm the trial court's judgment. AFFIRMED.